OPINION OF THE COURT BY JUSTICE HUGHES
Ten years ago in Breathitt County Board of Education v. Prater, 292 S.W.3d 883 (Ky. 2009), this Court recognized that the denial of a substantial claim of absolute immunity entitled the claimant to an immediate appeal. Noting that immunity entitles the possessor to be free from the burdens of litigation, not merely liability, and that such entitlement could not be fully vindicated following a final judgment, we authorized an exception to the final judgment rule for appellate jurisdiction, an exception patterned on the federal collateral order doctrine. Several years later, in Commonwealth v. Farmer, 423 S.W.3d 690 (Ky. 2014), we addressed the attempted interlocutory appeal of the denial of self-defense immunity in a criminal case. The Kentucky Constitution and the appellate jurisdiction statute, Kentucky Revised Statute (KRS) 22A.020, precluded that type of criminal interlocutory appeal but we noted that even in the absence of the constitutional and statutory constraints, the collateral order doctrine would not allow it.
Today, we encounter an interlocutory appeal from the denial of a judicial statements privilege in litigation between two physicians, and unequivocally deem the matter before us to be well beyond the parameters of appellate interlocutory jurisdiction. A privilege is not synonymous with or equivalent to immunity because it does not relieve the holder of the burdens of litigation or even, necessarily, the imposition of liability. Moreover, as we noted in Farmer, the collateral order doctrine authorizes immediate appeal of orders that conclusively determine an important issue *561 separate from the merits of the action and that are effectively unreviewable on appeal from a final judgment but, even then, only in those circumstances where allowing the case to proceed would imperil a substantial public interest. Id. at 697. This case does not meet those criteria. Because neither the Court of Appeals nor this Court has appellate jurisdiction of this unauthorized interlocutory appeal, we vacate and remand to the trial court for further proceedings in this case.
FACTS AND RELEVANT PROCEDURAL BACKGROUND
Beginning in the mid-2000s, Dr. Angela K. Maggard and Dr. Bruce Kinney practiced obstetrics and gynecology in Prestonsburg, Kentucky. Both physicians performed procedures at Highlands Regional Medical Center (HRMC), but worked at separate medical practices and competed for patients. Dr. Maggard alleges that Dr. Kinney engaged in a pattern of conduct intended to damage her reputation and lure her patients to his medical practice.
Dr. Maggard claims, among other things, that Dr. Kinney enticed Kathy Harless, a former patient of Dr. Maggard's, to file a medical malpractice action against her. In 2005, after Dr. Maggard performed a hysterectomy on Harless, she complained of incontinence and Dr. Maggard referred her to a urologist. The urologist diagnosed her with a condition where an abnormal tract develops between the bladder and the vagina, allowing the involuntary discharge of urine. Harless claimed that, after Dr. Maggard heard the diagnosis, she called and admitted to accidentally cutting a hole in Harless's bladder during the surgery, but Dr. Maggard strongly denied this allegation. After Dr. Maggard's practice refused to pay Harless's medical bills, Harless filed a Federal Tort Claims Act action in the United States District Court for the Eastern District of Kentucky.[1] Harless later confirmed that Dr. Kinney had told her husband she should sue Dr. Maggard for medical malpractice and that he would help them find an attorney.
Dr. Kinney served as Harless's sole expert witness at the bench trial and opined that Dr. Maggard's actions fell below the standard of care, which resulted in Harless's injury. The federal district judge eventually entered judgment in favor of the United States based on the lack of proof that Dr. Maggard caused any injury. In so ruling, the judge further specifically found that Dr. Kinney lacked objectivity and credibility as a witness.
While Harless's federal case was pending, Dr. Kinney filed a grievance against Dr. Maggard with the Kentucky Board of Medical Licensure (KBML). He accused Dr. Maggard of performing unnecessary procedures, breaking a newborn's skull during delivery, falsifying medical records, defrauding Medicaid, engaging in fraudulent billing and referral practice, and of being a pathological liar. Dr. Kinney's grievance referred to eleven patients, three of whom Dr. Maggard never even treated. Dr. Maggard also claims that Dr. Kinney encouraged at least two of her former patients to file grievances. The KBML determined that all of the grievances lacked merit and dismissed them.
In addition to the statements made before the KBML, Dr. Maggard alleges that Dr. Kinney made false and defamatory statements to hospital administrators, physicians, and staff members at HRMC
*562 where both of them were on staff. Dr. Maggard supports these allegations through the testimony of Dr. Enrico Ascani, another obstetrician/gynecologist practicing at HRMC. Dr. Ascani testified that Dr. Kinney told him he would run Dr. Maggard out of business. Additionally, Dr. Ascani confirmed that during a staff meeting where Dr. Maggard was elected the Chairperson of obstetrics and gynecology, Dr. Kinney referred to her as "black-hearted and evil." These statements were allegedly also made to other physicians and administrators at HRMC.
On March 4, 2009, Dr. Maggard filed a Complaint in Floyd Circuit Court, asserting that Dr. Kinney: (1) libeled and slandered her in his federal case testimony during the Harless case; (2) libeled and slandered her in his KBML grievance; (3) made false statements to her colleagues, patients, hospital administrators, and the KBML; (4) violated KRS 311.590[2] by providing false and fraudulent information to the KBML; (5) wrongfully used civil proceedings by filing false KBML grievances and recruiting others to do the same; and (6) committed abuse of process by reporting her to the KBML, and causing others to report her, for purposes other than discipline.
Dr. Kinney moved to dismiss Dr. Maggard's Complaint but the trial court denied the motion. Thereafter, Dr. Kinney filed an Answer in which he asserted the judicial statements privilege as a defense. After Dr. Kinney's Answer, nothing happened in the case for nearly two years. During 2011 through 2013, the trial court conducted several pretrial conferences and the parties engaged in a few discovery attempts, but otherwise little activity occurred. In December 2013, Dr. Maggard filed an Amended Complaint, asserting claims regarding the defamatory statements Dr. Kinney made in relation to the KBML proceedings in addition to the Harless case testimony. On January 17, 2014, Dr. Kinney again filed a motion to dismiss the Amended Complaint, asserting immunity under the judicial statements privilege and citing Morgan & Pottinger, Attorneys, P.S.C. v. Botts, 348 S.W.3d 599 (Ky. 2011). Dr. Kinney argued that the judicial statements privilege deemed applicable to the Kentucky Bar Association (KBA) disciplinary proceedings in Botts also applied to the statements he made during the KBML proceedings, warranting dismissal of the Amended Complaint. The trial court denied the motion.
In April 2014, Dr. Maggard filed a Second Amended Complaint and on May 29, 2014, Dr. Kinney filed a motion to dismiss that Complaint asserting "the protections of the judicial statements privilege for absolute immunity" against Dr. Maggard's claims. On the same day, he filed a motion to stay the proceedings pending final determination of the applicability of immunity as a bar to Dr. Maggard's claims. Dr. Kinney cited Prater, 292 S.W.3d at 883, for the proposition that the denial of a claim of absolute immunity entitles the claimant to an immediate appeal. He alleged that his immunity under the judicial statements privilege required all further proceedings to be stayed. The trial court denied Dr. Kinney's motion to dismiss on June 25, 2014, and held the motion to stay in abeyance.
Dr. Kinney filed an interlocutory appeal in the Court of Appeals on July 11, 2014, arguing that he was immune from Dr. Maggard's claims. Shortly thereafter, he filed a motion for intermediate relief pursuant to *563 Kentucky Rule of Civil Procedure (CR) 76.33. On October 17, 2014, the Court of Appeals granted the motion, in part, holding that Dr. Kinney was entitled to a stay of the proceedings on the claims involving his statements to the KBML until his claim of absolute immunity was finally adjudicated. The appellate court noted, however, that any immunity would not extend to the claims based on statements made to co-workers and patients outside the KBML proceedings.
In its opinion on the interlocutory appeal,[3] a divided Court of Appeals' panel found that Dr. Kinney was immune from some, but not all, of Dr. Maggard's claims. Equating the judicial statements privilege with absolute immunity, the panel first found appellate interlocutory jurisdiction proper pursuant to Prater. Substantively, the Court of Appeals determined that the judicial statements privilege immunized Dr. Kinney from the libel and slander claim based on his deposition and trial testimony during the federal case brought by Harless. As to libel and slander stemming from the KBML proceedings, the appellate court agreed with Dr. Kinney that applying the judicial statements privilege to the KBML proceedings would be a logical extension of this Court's holding in Botts that statements made to the KBA during attorney discipline proceedings are absolutely privileged. 348 S.W.3d at 605. Based on this extension of Botts, the Court of Appeals determined that Dr. Maggard's claim alleging Dr. Kinney violated KRS 311.590 by filing false or fraudulent information with the KBML must also be dismissed.
As to the counts based on Dr. Kinney's false statements to Dr. Maggard's co-workers, colleagues and patients, as well as to HRMC administrators and the KBML and the wrongful use of civil proceedings at the KBML, the Court of Appeals remanded to the trial court. To the extent that any defamatory statements were made to the KBML throughout the grievance process, those statements would be privileged, but disparaging statements made to others outside the disciplinary process were not privileged.
Finally, as to the claim that Dr. Kinney committed abuse of process by reporting, and causing others to report, Dr. Maggard to the KBML for a purpose unintended by the disciplinary process, the Court of Appeals concluded that since Botts was applicable to the KBML proceedings (under their opinion), the judicial statements privilege also applied to preclude an abuse of process claim stemming from the KBML disciplinary process. However, Dr. Maggard could maintain an abuse of process claim to the extent it was based on Dr. Kinney's efforts to recruit others to file grievances.
In his dissent, Judge Thompson opined that Dr. Maggard should have been permitted to maintain an abuse of process claim based on Dr. Kinney's KBML grievance in accordance with the Court of Appeals' holding in Halle v. Banner Industries of N.E., Inc., 453 S.W.3d 179 (Ky. App. 2014). In Halle, the Court of Appeals held that the judicial statements privilege applied only to a defendant's statements during legal proceedings, not to a defendant's motives for initiating legal proceedings, and therefore, it did not shield a defendant from abuse of process claims. Also, the dissent questioned extending Botts beyond KBA disciplinary proceedings.
*564 On discretionary review, Dr. Maggard's brief and oral argument focused on the threshold issue of whether the Court of Appeals had appellate interlocutory jurisdiction. We begin with that dispositive issue.
ANALYSIS
I. The Collateral Order Doctrine is a Narrowly Circumscribed Exception to the Final Judgment Rule.
Appealable judgments are generally "final order[s] adjudicating all the rights of all the parties in an action or proceeding." CR 54.01.[4] Recognizing that some non-final orders "address substantial claims of right which would be rendered moot by litigation and thus are not subject to meaningful review in the ordinary course following a final judgment," in Prater, 292 S.W.3d at 886, we adopted a recognized application of the federal collateral order doctrine.[5] That case involved a personal injury claim brought by an individual, Prater, who fell while visiting a friend, a school groundskeeper who lived in a residence owned by the Board, the sole defendant. The trial court denied the Board's assertion of absolute, governmental immunity as to Prater's claim, and the Board sought immediate interlocutory appeal, which we allowed. As succinctly stated in the context of that case, "an order denying a substantial claim of absolute immunity is immediately appealable even in the absence of a final judgment." Id. at 887.
Subsequently, in Farmer, 423 S.W.3d at 696-97, we expounded on the contours of the doctrine and explained that simply being denied a claimed "immunity" was not sufficient. In that criminal case, the defendant sought immediate appeal of the denial of his claim of immunity from prosecution based on self-defense pursuant to KRS 503.085. We disallowed the interlocutory appeal because it was not authorized by the Kentucky Constitution or statute and it did not fit within the collateral order exception to the final judgment rule. The collateral order doctrine requires an order that (1) conclusively decides an important issue separate from the merits of the case; (2) is effectively unreviewable following final judgment; and (3) involves a substantial public interest that would be imperiled absent an immediate appeal. 423 S.W.3d at 696-97.
Perhaps because Farmer was a criminal case, its discussion of the narrow confines of the collateral order doctrine - in every case, civil or criminal - has been overlooked. In any event, we quote at length to re-emphasize:
The essence of the Mitchell [v. Forsyth , 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) ] decision upon which Prater was premised, precisely that "the denial of a substantial claim of absolute immunity is an order appealable before final judgment," was based in part on a previous Supreme Court decision styled *565 Nixon v. Fitzgerald, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982). In Nixon, the Court addressed the "small class" of immediately appealable interlocutory orders falling within the collateral order doctrine. 457 U.S. at 742, 102 S.Ct. 2690. Those orders, the Nixon Court explained, "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and [are] effectively unreviewable on appeal from a final judgment. Id. (internal citations omitted).
In the years since the publication of Mitchell and Nixon, the Supreme Court has encountered a variety of cases invoking the collateral order doctrine.... In 2006, the Supreme Court unanimously decided Will v. Hallock, 546 U.S. 345, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006), a case which closely scrutinized the limitations of the collateral order doctrine. The Will decision defined the driving force of collateral order jurisprudence as follows:
In each case, some particular value of a high order was marshaled in support of the interest in avoiding trial: honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, respecting a State's dignitary interests, and mitigating the government's advantage over the individual.[6] That is, it is not mere avoidance of a trial, but avoidance of a trial that would imperil a substantial public interest, that counts when asking whether an order is "effectively" unreviewable if review is to be left until later. 546 U.S. at 352-53, 126 S. Ct. 952 (emphasis supplied).
Id. In Farmer, we noted that the defendant's interest in asserting self-defense immunity and avoiding prosecution was not a matter of substantial public interest but was instead purely personal and, further, the order denying immunity did not "resolve an important issue completely separate from the merits of the action." 423 S.W.3d at 699 (citing Nixon, 457 U.S. at 742, 102 S.Ct. 2690 ).
The United States Supreme Court reiterated the carefully circumscribed nature of the collateral order doctrine in Ashcroft v. Iqbal, 556 U.S. 662, 671, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), when it referred to the "limited set" of orders and "narrow category" of cases which qualify for immediate appeal. The Court acknowledged "as a general matter, the collateral-order doctrine may have expanded beyond the limits dictated by its internal logic and strict application of the [ Cohen ] criteria." Id. at 672, 129 S.Ct. 1937. Shortly thereafter in Mohawk Industries, Inc. v. Carpenter, 558 U.S. 100, 103, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009), the Supreme Court held that orders requiring disclosure of attorney-client privileged material did not qualify for collateral order immediate appeal because "[p]ostjudgment appeals, together with other review mechanisms, suffice to protect the rights of litigants and preserve the vitality of the attorney-client privilege."[7]
*566 Recently, in Baker v. Fields, 543 S.W.3d 575, 577 (Ky. 2018), this Court emphasized that interlocutory appeals are appropriate only in "rare cases." We state again, emphatically, that the collateral order doctrine is limited in scope, requiring all the elements identified supra in Farmer. Like the federal courts, Kentucky courts have in some instances allowed the collateral order doctrine to expand beyond its "logic and ... the [ Cohen ] criteria."[8] Iqbal, 556 U.S. at 672, 129 S.Ct. 1937. A claim of sovereign or governmental immunity satisfies the criteria but many other theories couched as immunity will not. This case presents one of those theories and while we could begin with the simple observation that no governmental entity or official is a party to this long-running litigation and thus the prospects of immunity justifying a collateral order interlocutory appeal are slim to none, we will start with the basic premise that a privilege is not the same as immunity.
II. The Judicial Statements Privilege Is not a Form of Immunity, the Denial of which Allows for an Interlocutory Appeal under the Collateral Order Doctrine.
Immunity is generally understood at law as "[a]ny exemption from a duty, liability, or service of process; esp., such an exemption granted to a public official or governmental unit." Immunity, Black's Law Dictionary (9th ed. 2009). We noted in Prater, 292 S.W.3d at 886 (quoting Rowan County v. Sloas, 201 S.W.3d 469, 474 (Ky. 2006) ), that "immunity entitles its possessor to be free 'from the burdens of defending the action, not merely ... from liability.' "
By contrast, a privilege pertains to the availability of evidence in legal proceedings, and more particularly serves as protection from the production of evidence covered by the privilege. Thus, Kentucky Rule of Evidence (KRE) 501, General Rule, in Article V. of the KRE entitled "Privileges," conveys the essence of a privilege:
Except as otherwise provided by Constitution or statute or by these or other rules promulgated by the Supreme Court of Kentucky, no person has a privilege to:
(1) Refuse to be a witness;
(2) Refuse to disclose any matter;
(3) Refuse to produce any object or writing; or *567 (4) Prevent another from being a witness or disclosing any matter or producing any object or writing.
Privileges set forth in the Kentucky Rules of Evidence include inter alia the lawyer-client privilege ( KRE 503 ); husband-wife privilege ( KRE 504 ); religious privilege ( KRE 505 ) and counselor-client privilege ( KRE 506 ). The judicial statements privilege invoked by Dr. Kinney in this case does not appear in the KRE but is one of the "rules promulgated by the Supreme Court of Kentucky" referenced in the preamble to KRE 501. Regardless of source, these privileges all pertain to communications - oral or written statements - made in the context of a particular relationship or, in the case of the judicial statements privilege, a particular setting.
The judicial statements privilege, described in Schmitt v. Mann, 291 Ky. 80, 163 S.W.2d 281, 283 (1942), as the "prevailing rule" in Kentucky and this country, provides that statements "in judicial proceedings are absolutely privileged when material, pertinent, and relevant to the subject under inquiry, though it is claimed that they are false and alleged with malice." (Citations omitted). The privilege encompasses written statements in pleadings as well as the statements of witnesses in judicial proceedings. Id. If the statements are not pertinent and material to the matter at issue, they are only qualifiedly privileged, i.e., they are privileged only if made in good faith. Id. Derived from caselaw, as opposed to a statute or rule of evidence, the judicial statements privilege "rests upon public policy 'which looks to the free and unfettered administration of justice.' " Id. at 284. The emphasis is on judicial (or quasi-judicial) proceedings. See Stilger v. Flint, 391 S.W.3d 751, 753 (Ky. 2013) ("longstanding ... [general] rule that statements made during the course of a judicial proceeding shall enjoy an absolute privilege" does not extend to attorney's letter to state Attorney General).
In Halle v. Banner Industries of N.E., Inc., 453 S.W.3d at 184, our Court of Appeals correctly distinguished the judicial statements privilege from immunity:
Although sometimes referred to as providing immunity from civil suit, to say the speaker is immune from civil liability is a misnomer. As its name implies, it is a privilege and, therefore, precludes the use of those privileged communications to sustain a cause of action. It does not bar the cause of action but only renders it unsustainable if based exclusively on statements privileged under the law. Generally stated, it affords an absolute privilege to statements made "preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding" and that have "some relation to a proceeding that is contemplated in good faith and under serious consideration."
Citing Rogers v. Luttrell, 144 S.W.3d 841, 843-44 (Ky. App. 2004) (quoting General Electric Co. v. Sargent & Lundy, 916 F.2d 1119, 1127 (6th Cir. 1990) ).
Admittedly the judicial statements privilege is somewhat different from the confidential relationship privileges listed supra wherein statements made in confidence to, for example, one's attorney or spouse generally do not have to be disclosed and cannot be admitted into evidence. By contrast, the judicial statements privilege covers statements that have already been made in a public manner, such as pleadings and witness testimony, but, like other more common testimonial privileges, its legal significance is to preclude use of those statements in a subsequent legal action in support of a cause of action or defense. In Botts, 348 S.W.3d at 601, the *568 appellants claimed immunity from suit "pursuant to the judicial statements privilege and [Supreme Court Rule] SCR 3.160(4)," and we proceeded to hear an interlocutory appeal. (Emphasis added.) Botts is addressed in more depth infra, given its pivotal role in this appeal, but as the Court of Appeals observed in Halle for cases involving purely an asserted judicial statements privilege, no immunity is involved. To clarify some confusion with one parallel, and sometimes intersecting legal rule, we note that this Court has recognized so-called "witness immunity."
In Jefferson County Commonwealth Attorney's Office v. Kaplan, 65 S.W.3d 916, 921 (Ky. 2002), this Court noted "the law of the Commonwealth is that a witness testifying in a judicial proceeding has absolute immunity from liability if his or her testimony has some relation to the proceeding." See also Briscoe v. LaHue, 460 U.S. 325, 330-31, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (tracing English common law and American versions of "immunity of parties and witnesses from subsequent damages liability for their testimony injudicial proceedings.") More recently, in Curd v. Kentucky State Board of Licensure for Professional Engineers and Land Surveyors, 433 S.W.3d 291, 298 (Ky. 2014), we emphasized that witness immunity was from liability for civil damages, and thus did not apply to preclude disciplinary proceedings against a licensed land surveyor for testimony he had given in an earlier quiet-title action. Accord Maggard v. Commonwealth, Bd. of Exam'rs of Psychol., 282 S.W.3d 301 (Ky. 2008) (licensed psychologist not immune from professional discipline for testimony in support of dental malpractice action). Thus, witness immunity exists in appropriate circumstances but it is only immunity from damages liability, as reflected in these cases and not the more comprehensive immunity "from the burdens of defending the action ..." discussed in Prater, 292 S.W.3d at 886 (citing Rowan County v. Sloas, 201 S.W.3d at 474 ).
Notably, in Kelly v. Great Seneca Financial Corp., 447 F.3d 944 (6th Cir. 2006), the Sixth Circuit considered the common law doctrine of absolute witness immunity in the context of an attempted collateral order interlocutory appeal. That Court emphasized that the United States Supreme Court had never stated "that denials of all forms of absolute immunity, regardless of the function that the invoking litigant served, were immediately appealable." Id. at 948. In rejecting the right of interlocutory appeal of a collateral order denying witness immunity, the Kelly Court stated that witness immunity "strengthens the substantial public interest of having witnesses come forward and testify truthfully ... but lack of interlocutory appeal from denials of witness immunity does not 'imperil [this] substantial public interest." Id. at 949 (citing Will, 546 U.S. at 353, 126 S. Ct. at 959 ). The Kelly Court noted the emphasis by the United States Supreme Court in Will on limiting the collateral order exception to cases involving a substantial public interest that would be threatened by a trial or other proceedings on the merits of the full case. Witness immunity did not qualify.
In sum, an order disallowing the application of the judicial statements privilege is not denial of immunity. Rather, the ruling allows statements previously made in a judicial proceeding to be used for some purpose in current legal proceedings. The order does not merit immediate appellate review because it does not satisfy the collateral order doctrine requirements of an order involving a substantial public interest that will be imperiled if appellate review is delayed until after further proceedings and final judgment. Even if the *569 material or statements at issue fit within the concept of witness immunity, immediate review is still not appropriate because of the lack of a substantial public interest as explained by the Sixth Circuit in Kelly. As in Farmer, the interest at stake with witness immunity (at least in most instances) is merely personal.
Thus, the Court of Appeals erred in this case by equating the judicial statements privilege with immunity and deeming the trial court's order denying use of that privilege appropriate under the collateral order doctrine for interlocutory appellate jurisdiction. Even to the extent so-called "witness immunity" may apply to testimony given by Dr. Kinney in the Harless case, the collateral order exception to the final judgment rule is not applicable due to the lack of an imperiled substantial public interest.
III. Botts is a Limited Holding and Does Not Support Interlocutory Appeal of an Order Denying Use of the Judicial Statements Privilege.
The confusion in this case springs largely from this Court's divided opinion in Botts, 348 S.W.3d 599, a 4-3 opinion with two separate dissents. In that case, a law firm and its corporate client filed a disciplinary complaint against lawyer Botts, and after KBA proceedings, including an evidentiary hearing, the charges were dismissed. Botts subsequently filed suit against the law firm and corporation (his former client and the law firm's current client) alleging defamation, slander and other harm stemming from the disciplinary complaint they had filed. The trial court denied the law firm and corporation their claimed immunity "from suit pursuant to the judicial statements privilege and SCR 3.160(4)." Id. at 601. This Court, citing Prater, held that denial of these claims of absolute immunity formed a proper basis for an interlocutory appeal, and proceeded to address the issue on the merits.
Just as the United States Supreme Court recognized in Iqbal, that it had on occasion stretched the collateral order exception beyond its logic and criteria, this Court did exactly that in Botts to the extent either the corporation or law firm was relying solely on the judicial statements privilege. As we have explained, this privilege is not a form of immunity and its denial does not qualify for interlocutory appeal under the criteria of the collateral order doctrine. Of course, the law firm in Botts occupied a different stance than its corporate client because the referenced Supreme Court Rule, SCR 3.160(4), grants the parties identified in that rule - including members of the KBA such as the attorneys in the law firm - immunity from liability for damages arising out of a disciplinary complaint or investigation.[9] So the law firm did have a form of immunity even though the corporate client did not. With the experience that comes from subsequent cases invoking the collateral order doctrine and after more careful consideration of that doctrine in Farmer, we view the Botts ' interlocutory appeal differently. Certainly, the corporate client had no grounds for such immediate review. Whether the law firm's immunity derived from our own Supreme Court Rules qualified as an issue of substantial public interest *570 that would be irreparably imperiled in the absence of immediate appellate review is an issue we leave for another day. Botts is overruled, however, to the extent it allows interlocutory appeal of an order disallowing a party's invocation of the judicial statements privilege.
Because interlocutory appellate jurisdiction was not proper in the case before us, the Court of Appeals' further reliance on Botts to address the substantive issues raised is beyond the scope of this opinion. We would be remiss if we did not caution the lower courts to recognize, as the trial court perhaps did, that Botts focuses on the unique area of KBA disciplinary proceedings and is of minimal precedential impact beyond that area.
CONCLUSION
The trial court's order denying Dr. Kinney's asserted "immunity under the judicial statements privilege" was not subject to interlocutory appeal to the Court of Appeals pursuant to our collateral order exception to the final judgment rule. Accordingly, we vacate the Court of Appeals' opinion and remand this case to the Floyd Circuit Court for further proceedings consistent with this Opinion.
All sitting. All concur.

Dr. Maggard was employed through a federally-sponsored clinic so the Federal Tort Claims Act governed the jurisdiction and procedural management of the action. 28 U.S.C. § 1346. The named defendant was the United States of America.

KRS 311.590 provides that no person shall knowingly make false or fraudulent statements to the KBML or engage in dishonesty in disciplinary proceedings.

Unfortunately, this case languished in the Court of Appeals until the February 23, 2018 decision.

Prater, 292 S.W.3d at 886, identifies some exceptions to this general rule including CR 54.02 (permitting appeal of judgment as to one or more but less than all claims or parties where trial court finds "no just reason for delay"); CR 65.07 (allowing appeal from orders regarding temporary injunctions); KRS 22A.020(4) (allowing appeal of criminal case orders in certain circumstances); KRS 417.220 (permitting appeal of order denying arbitration); and Asset Acceptance, LLC v. Moberly, 241 S.W.3d 329 (Ky. 2007) (allowing appeal of order setting aside judgment more than a year old pursuant to CR 60.02(f) ).

Originally adopted in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 545-46, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the collateral order doctrine is sometimes referred to as the Cohen doctrine or rule.

The cases referenced are: "honoring the separation of powers," Nixon, 457 U.S. 731, 102 S.Ct. 2690 (Presidential immunity) ; "preserving the efficiency of government and the initiative of its officials," Mitchell, 472 U.S. 511, 105 S.Ct. 2806 (qualified immunity of U.S. Attorney General); "respecting a State's dignitary interests," Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (State's Eleventh Amendment immunity); and "mitigating the government's advantage over the individual," Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (ruling on double jeopardy adverse to defendant).

The noted "review mechanisms" were certification of a question of controlling law pursuant to 28 U.S.C. § 1292(b) and a petition for writ of mandamus. We have used the latter mechanism in select cases presenting issues of privilege. See, e.g., St. Luke Hosps., Inc. v. Kopowski, 160 S.W.3d 771 (Ky. 2005) (writ authorized to protect hospital's attorney-client privileged communications in medical malpractice case.).

This Court has generally limited interlocutory jurisdiction to sovereign, governmental and official immunity claims. See, e.g., Madison Cty. Fiscal Court v. Ky. Labor Cab., 352 S.W.3d 572 (Ky. 2011) (county fiscal court, fire district and municipal corporations' claims of governmental or sovereign immunity in firefighters' administrative action for unpaid overtime); Commonwealth v. Ky. Ret. Sys., 396 S.W.3d 833 (Ky. 2013) (Commonwealth's claim of sovereign immunity in a declaratory judgment action); Univ. of Louisville v. Rothstein, 532 S.W.3d 644 (Ky. 2017) (university's claim of governmental immunity in an employment contract dispute); Baker v. Fields, 543 S.W.3d 575 (Ky. 2018) (public school officials' claim of qualified official immunity in negligence action); and Ritchie v. Turner, 559 S.W.3d 822 (Ky. 2018) (public school officials' claim of qualified official immunity in student's tort and breach of contract action). But see Kirby v. Lexington Theological Seminary, 426 S.W.3d 597, 609 n.45 (Ky. 2014) ("denial of a religious institution's assertion of the ministerial exception [in an employment dispute] is appropriate for interlocutory appeal" pursuant to Prater ).

SCR 3.160(4) states:
Neither the Association, the Board, the Director, the Inquiry Commission, the Trial Commission, the Office of Bar Counsel, nor their officers, employees, agents, delegates or members shall be liable, to any person or entity initiating a complaint or investigation, or to any member of the bar or any other person or entity being charged or investigated by, or at the direction of, the Inquiry Commission, for any damages incident to such investigation or any complaint, charge, prosecution, proceeding or trial.