RENDERED: MARCH 4, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0284-MR

ANESTHESIA HEALTH
CONSULTANTS, LLC                                                          APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE AUDRA J. ECKERLE, JUDGE
ACTION NO. 19-CI-004427


SLEEP EZ ANESTHESIA, PLLC AND
TRAVIS L. SMITH                                                          APPELLEES


OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, GOODWINE, AND LAMBERT, JUDGES.

CALDWELL, JUDGE: Anesthesia Health Consultants, LLC ("AHC") appeals

from a contempt order and a CR[1] 12.02 dismissal order. We reverse the dismissal

and remand for further proceedings, but we do not disturb the contempt order.

---

[1] Kentucky Rules of Civil Procedure.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

AHC is an Indiana limited liability company ("LLC") doing business in Kentucky. Its membership consists of five other limited liability entities: 1) SKY Investments LLC, 2) Metric Anesthesia Consultants PLLC ("Metric"), 3) Sleep EZ Anesthesia PLLC ("Sleep EZ"), 4) Kentuckiana Anesthesia Consultants PLLC ("KAC"), and 5) Louisville Anesthesia Provision LLC ("LAP").

AHC's operating agreement was signed by each member entity's owner: 1) Stephen Young, MD, for SKY Investments LLC, 2) Chad Riddle for Metric, 3) Travis Smith for Sleep EZ, 4) Elias Murphy for KAC, and 4) Kyle Goldsmith for LAP. Each member provides anesthesia medical care and is owned by either a nurse anesthetist or a physician.

In July 2019, a complaint was filed – purportedly by AHC – against Goldsmith, LAP, Smith, and Sleep EZ in Jefferson Circuit Court. The complaint indicated that attorneys Scott Zoppoth and Bradley Zoppoth represented AHC. The complaint alleged breach of fiduciary duties, breach of AHC's operating agreement, intentional interference with a business advantage and relationship, theft of corporate opportunity, and unjust enrichment. AHC's operating agreement was attached as an exhibit to the complaint.

In August 2019, two separate but similar motions to dismiss under CR 12.02 were filed by 1) Goldsmith and LAP, and 2) Smith and Sleep EZ. Both motions argued the complaint should be dismissed due to lack of standing to sue. They argued the operating agreement required unanimous member approval for AHC to retain counsel and file the lawsuit. They argued that the unanimous member approval was lacking for this action as they did not approve.

Both dismissal motions asserted that other members – KAC and Metric through their respective owners Murphy and Riddle – hired the Zoppoth law firm to file suit for AHC without obtaining unanimous approval from AHC's members. They argued AHC lacked authority to hire counsel or file the lawsuit and thus lacked standing to sue. These motions to dismiss were filed in lieu of answers to the complaint. No counterclaims were filed.

The plaintiff filed a response to the motions to dismiss. Contrary to the defendants' arguments, the plaintiff argued that the operating agreement clearly gave members authority to hire counsel and to file lawsuits on AHC's behalf without unanimous approval of its membership. It also argued that if the trial court found the operating agreement ambiguous, that any ambiguity must be construed in its favor when ruling on the motion to dismiss. Thus, it asserted that the trial court could not properly grant the motion for dismissal.

The parties also filed other motions[2] before the trial court ruled on the motion to dismiss. For example, the defendants filed a motion for an accounting. Before the trial court ruled on the motion to dismiss, the motion for an accounting was discussed at a hearing. All parties – including plaintiff AHC according to attorney Scott Zoppoth's representations – agreed to an accounting.

On or about September 19, 2019, the trial court entered an order for an accounting. The accounting order also provided for a partial freeze on payments from AHC's bank accounts pending completion of the accounting. The order prohibited AHC "from making any further payments to any of its members, or its purported Counsel, from its Company bank accounts." (Page 2 of order entered 9/19/2019, Record ("R."), p. 251.)

Shortly thereafter, the plaintiff filed a motion for reconsideration and/or clarification of the accounting order. The plaintiff argued that no one had disputed that salaries should be paid and that the accounting order should be clarified to only prohibit bonus payments pending further court order.

---

[2] For example, the plaintiff/appellant filed a motion to consolidate this case with other cases then-pending in other divisions of the Jefferson Circuit Court concerning disputes between AHC members. After initially reserving ruling on the consolidation motion pending resolution of the motion to dismiss, the trial court eventually denied the consolidation motion. The appellees argue in their appellate brief for dismissing the appeal entirely due to other cases pending in other divisions of Jefferson Circuit Court, but these other cases are not before us. Nor has an appeal or cross-appeal been taken from the order denying consolidation – which found that the cases pending in other divisions of the Jefferson Circuit Court involved different factual and legal questions.

The defendants filed a joint response to this motion along with a motion for contempt sanctions. The defendants agreed that the accounting order should be modified to the extent that members could be paid for verified clinical time. But they contended that Murphy should be held in contempt for writing a $14,544 check to himself on an AHC account a few days after the accounting order was entered.

At a hearing, the parties agreed that the accounting order should be amended to provide that members could be paid for verified clinical time – although there were disputes about paying bonuses. Attorney Scott Zoppoth asserted that his "client" Murphy had not received a copy of the court's accounting order when Murphy wrote the check to himself for $14,544. Attorney Zoppoth believed the check was written for clinical time.

The defendants argued that Murphy had still violated the court's order and they disputed that the amount paid was for verified clinical time. The trial court allowed the plaintiff time to file a written response to the motion for contempt and the court stated it would enter an amended accounting order soon.

On or about October 8, 2019, the trial court entered an amended accounting order. This amended order allowed AHC to pay members for actual clinical time worked plus associated expenses. But AHC was still prohibited from

making any other payments to its members or its purported counsel from its company bank accounts.

In mid-October 2019, the plaintiff filed its response to the contempt motion with an attached affidavit from Murphy. Murphy averred that the $14,544 was paid for incentive fees due which were earned in August 2019 before the accounting order was entered. He also averred that he was not aware of the trial court's accounting order when he wrote the $14,544 check.

The defendants filed a reply, asserting Murphy violated the court's orders by writing himself a check on AHC's account for nonclinical time. They further asserted AHC had improperly paid KAC over $5,000 for unearned, nonclinical time in mid-October in violation of the amended accounting order.

On October 28, 2019, the trial court entered an order dismissing AHC's claims against Goldsmith and LAP. The trial court found that the operating agreement required unanimous approval of AHC members before AHC could retain counsel and "pursue direct legal action." (R., p. 488.) It found that because AHC members LAP and Sleep EZ did not approve of AHC's retaining counsel and filing the lawsuit, that KAC and Metric lacked authority to bring a lawsuit for AHC. So, it concluded that AHC lacked standing to sue.

Although the October 28, 2019 order dismissed the complaint against LAP and Goldsmith, no similar order was entered then which dismissed all claims

against Smith and Sleep EZ – apparently due to clerical error.[3]  The trial court also entered an order denying the defendants' motion for contempt and sanctions.

Smith and Sleep EZ filed a motion to amend the order of dismissal so they would be dismissed as well.  They also requested that since the trial court found that KAC and Metric lacked authority to file the lawsuit and that AHC lacked standing to sue, that the trial court order repayment for amounts paid to the Zoppoth law firm from AHC accounts for representation in the action.

Before the trial court ruled on their motion to amend the dismissal order, Smith and Sleep EZ filed a renewed motion for contempt sanctions in November 2019.  They alleged again that Murphy had paid himself for nonclinical time in late September 2019 in violation of the trial court's accounting order.

Smith and Sleep EZ also alleged again that Murphy had violated the amended accounting order by paying his company, KAC, about $5,000 from AHC accounts for unearned, nonclinical time in mid-October 2019.  They further alleged that, in November 2019, Murphy and Riddle paid their respective companies (KAC and Metric) from AHC accounts tens of thousands of dollars which were not for verified clinical time.

---

[3] The trial court's order denying consolidation – entered the same day – stated the trial court was dismissing the lawsuit against all defendants by separate order.

Smith and Sleep EZ asserted that the trial court's orders had been willfully violated by AHC, Murphy, Riddle, KAC, and Metric. Smith and Sleep EZ argued these parties should be found in contempt and ordered to pay monetary sanctions. They requested reimbursement to AHC for all amounts paid in violation of court orders and reimbursement to Smith and Sleep EZ for fees and expenses incurred in trying to enforce the trial court's accounting orders. They asked for "attorney's fees, costs and expenses, in an amount to be determined in post-order proceedings." (R., p. 619.)

At the hearing on the motion to amend the dismissal order and the renewed motion for contempt, attorney Zoppoth said he thought the accounting orders were no longer in place after the October 28 dismissal order and that was why additional amounts continued to be taken out of the AHC accounts. After hearing further argument and allowing further briefing, the trial court took the matter under submission.

On or around December 23, 2019, the trial court entered an order granting the contempt motion.[4] The trial court found that AHC and Murphy had

---

[4] The trial court stated in this order that it was granting "the joint motion for contempt" (R., p. 674.) The contempt motion filed by the defendants in November 2019 was styled as "Defendants' Renewed Motion for Contempt Sanctions[.]" (R., p. 611.)

violated its accounting orders and were in contempt.[5] The trial court ordered therein that Murphy immediately repay AHC for the $14,544 check. The trial court also ordered that Murphy reimburse the defendants for attorney fees and legal expenses incurred litigating the motions for accounting and contempt. It also ordered that Murphy's authority to sign checks for AHC was suspended pending further court orders.

On or about December 26, 2019, the trial court entered an amended order of dismissal which dismissed Smith and Sleep EZ as well as Goldsmith and LAP. Like the initial dismissal order, this order concluded that unanimous authorization was required to file suit and that AHC lacked standing to bring the suit since its members did not unanimously approve bringing suit. So, the trial court dismissed the complaint entirely pursuant to CR 12.02.

Unlike the initial dismissal order, the amended dismissal order also provided that KAC, Metric, and/or Zoppoth must repay to AHC all amounts previously paid to the Zoppoth law firm for the unauthorized representation of AHC. The order concluded by stating it was final and appealable and that there was no just reason for delay.

---

[5] There was no finding in the order whether Riddle, KAC, or Metric were found in contempt despite the request to hold them – as well as AHC and Murphy – in contempt in the renewed contempt motion.

AHC filed a motion for reconsideration of the contempt order and the amended dismissal order. Following further briefing and a hearing, the trial court denied the motion for reconsideration in February 2020. The written order specifically required that within five days: 1) Murphy comply with the December 2019 contempt order by repaying $14,544 to AHC, 2) that Murphy pay about $15,000 to defendants' attorneys for reimbursement of attorney fees for litigating the motions for accounting and contempt, and 3) that either the Zoppoth law firm or KAC or Metric reimburse AHC over $16,000 for all amounts paid to the Zoppoth law firm for its unauthorized representation of AHC in the action.

Shortly thereafter, the notice of appeal was filed, naming AHC as the sole appellant and the appellees as including Smith and Sleep EZ.[6] The notice of appeal indicated that the appeal was from three orders: 1) the February 2020 order denying reconsideration of dismissal and contempt orders, 2) the December 26, 2019 amended order of dismissal, and 3) the December 23, 2019 contempt order.

---

[6] Goldsmith and LAP were also originally named as appellees. However, Goldsmith, LAP, and the appellant later filed a joint motion to dismiss Goldsmith and LAP as parties to the appeal due to their reaching a settlement. The motion was granted, with the order noting that Smith and Sleep EZ had not filed a response to the motion.

-10-

# ANALYSIS

## We Decline to Strike Appellant Brief or Dismiss Appeal Despite Deficiencies

We first address deficiencies in the appellant brief as well as some arguments for dismissing the appeal – some of which were raised in the appellee brief. No reply brief was filed. An appellant brief was tendered in late August 2020 and returned as deficient. The deficiency notice pointed out two problems: 1) the brief exceeded the 25-page limit, and 2) the brief did not contain the appealed-from judgment, opinion, or order as the first document in the appendix after the list of attachments. *See* CR 76.12(4)(b)(i); CR 76.12(4)(c)(vii). The deficiency notice also stated: "Acceptance by the Clerk does not prevent a panel from striking the brief for failure to comply with CR 76.12. For a complete list of requirements of CR 76.12, please review the rule and the full check list provided on the Court's website."

In mid-September 2020, the appellant filed a motion for permission to exceed the 25-page limit so that the previously tendered, 26-page brief could be filed without incurring additional expense. However, the appellant apparently took no steps to remedy the other noted deficiency – failure to include, as the first document in the appendix, the appealed-from order or judgment. None of the

appealed-from orders identified in the notice of appeal were included in the appendix to the tendered appellant brief.[7]

In late October 2020, a motion panel granted the motion to allow filing a brief in excess of the 25-page limit and ordered the tendered brief filed – noting that no response had been filed to the motion. Neither the appellant's motion nor the motion panel order granting it discussed the other deficiency (not including any appealed-from order in the appendix) so perhaps this other deficiency was overlooked. In any event, despite the importance of including the judgment on appeal in the appendix to allow all merits panel members to easily access and review the trial court's judgment, we elect not to strike the brief despite our authority to strike briefs for substantial noncompliance with CR 76.12. *See* CR 76.12(8)(a).

The appellees argue that the appellant brief was not timely filed because it was not formally filed until over 60 days after the clerk's notice of the certification of the record in mid-July 2020.[8] But we decline to strike the brief or to dismiss the appeal on this basis since the motion for permission to exceed page

---

[7] Another trial court order – which was not one of the appealed-from orders listed in and attached to the notice of appeal – was included as the second document after the attachment list in the appendix to the tendered appellant brief.

[8] *See* CR 76.12(a); CR 75.07(6) (regarding time limits for filing briefs in relation to the clerk's notice of certification of the record).

limits was filed shortly after the deficiency notice and the motion panel ordered the appellant brief (tendered in August 2020) to be filed in October 2020.

In addition to these concerns, the appellant brief does not contain any statement identifying if or how the arguments on appeal were preserved for our review. *See* CR 76.12(4)(c)(v). Failure to include preservation statements in appellant briefs can have dire consequences. For example, our Supreme Court has recently indicated that appellate courts may assume issues are unpreserved and thus review only for manifest injustice when an appellant fails to provide a preservation statement. *See Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021).

Nonetheless, as we conclude all or most issues raised on appeal were raised to the trial court based on our review of the record, we elect not to simply review solely for manifest injustice. Still, we caution counsel to take greater care to comply with briefing requirements as we may not be so lenient in the future. We direct counsel's attention to our briefing checklists and appellate practice handbooks available as PDF resources on our court website, https://kycourts.gov/Courts/Court-of-Appeals/Pages/default.aspx. (Last visited Jan. 26, 2022.)

In addition to these briefing deficiencies, we share the appellees' concern that the arguments advanced in the appellant brief often appear aimed at

improving the financial interest of other parties rather than that of AHC, the sole named appellant. We question whether additional appellants should have been named in the notice of appeal since it appears that court orders directly imposing obligations on these individuals or entities rather than on AHC are challenged in the appellant brief. Assuming *arguendo* that all necessary and indispensable parties were named in the notice of appeal, we see no reason to disturb the contempt orders at issue though we conclude the dismissal must be reversed.

### Trial Court's CR 12.02 Dismissal Must be Reversed

The trial court's CR 12.02 dismissal hinges on its interpretation of AHC's operating agreement – which is included as the first attachment in the appendix to the appellant brief. Since the operating agreement was also attached to the complaint, the trial court's consideration of the operating agreement did not convert the CR 12.02 motion into a motion for summary judgment. So, we review the dismissal order under the appropriate standard of review for an order granting a CR 12.02 motion. *Netherwood v. Fifth Third Bank, Inc.*, 514 S.W.3d 558, 563-64 (Ky. App. 2017).

"Whether a court should dismiss an action pursuant to CR 12.02 is a question of law" subject to *de novo* review. *Morgan & Pottinger, Attorneys, P.S.C. v. Botts*, 348 S.W.3d 599, 601 (Ky. 2011), *overruled on other grounds by Maggard v. Kinney*, 576 S.W.3d 559, 570 (Ky. 2019). Applying this non-

-14-

deferential standard of review, we conclude that the trial court's dismissal of the lawsuit must be reversed.

The trial court's amended dismissal order succinctly found that unanimous approval of the members was required for AHC to retain counsel and file an action. The trial court did not explicitly discuss which operating agreement provisions it relied upon when reaching this conclusion in its written order.

The parties, however, explicitly pointed to particular operating agreement provisions when making their arguments to the trial court. For example, the defendants pointed to ¶7.1(a) which provided for member management of AHC and further stated: "Unless this Agreement requires a different vote with respect to a particular matter, decisions by the Members shall be made by unanimous vote of Members."

The plaintiff, on the other hand, pointed to ¶7.2(a)(2) which provided that members had the authority to manage day-to-day operations and that each member specifically had the authority to: "[o]btain professional services for the Company, including legal and accounting services." And they argued that each member had the authority to execute a contract to obtain legal services under ¶7.2(a)(9) which allowed for each member's "[e]xecuting, acknowledging, and delivering any and all instruments to effectuate any and all of the foregoing."

The defendants argued that despite ¶7.2(a)(2)'s providing that members could obtain legal services for AHC, that this authority was limited to obtaining legal services only for day-to-day operations and that each member only had authority to incur less than $1,500 in legal fees for AHC under ¶7.2(a)(6). ¶7.2(a) provided that members have responsibility and authority to manage day-to-day operations and that each member's authority included: "[i]ncurring reasonable expenditures less than $1,500.00 on behalf of the Company in connection with the day-to-day operation of the Company's business or as directed by the Company's members[.]" ¶7.2(a)(6).

The defendants also argued that each member was specifically prohibited from entering into contractual or agency relationships on behalf of AHC and from approving transactions which might create actual or potential conflicts of interests between AHC and its members or between the members. It pointed to provisions in ¶7.2(b) which provide in pertinent part:

> 7.2(b) A Member shall not have the authority, without first obtaining the unanimous approval of the Members, to undertake the following:
>
> (1) Cause a change in the nature of the Company's business;
>
> . . .
>
> (2) Approve a transaction between the Company and a Member or otherwise approving a transaction which might involve an actual or potential conflict of

-16-

interest between the Member and the Company or the
other Members;

. . .

(9) Enter into contractual relationships on behalf of the
Company;

(10) Cause the Company to enter into or terminate any
employment or agency relationship with any person
or legal entity; . . . .

The plaintiff countered by arguing that these prohibitions were overridden by the more specific provisions in ¶7.2(a) allowing members to individually obtain legal services for AHC and to execute instruments to do so. The plaintiff also recognized that various provisions might contradict one another as it argued that any ambiguities must be construed in its favor for purposes of ruling on the motion to dismiss.

The plaintiff also argued that finding unanimous member approval necessary for AHC to file a lawsuit to enforce the agreement against members in breach made no sense because presumably a member would not approve AHC's lawsuit against it. AHC further argued it required a vehicle to enforce the duties recognized in Article 10, such as that unitholders (members or their assignees)[9] owed "fiduciary duties of care, loyalty and fair dealing towards the Company and

---

[9] *See* definition of *Unitholders* in Article 15, found at page 24 of operating agreement (first attachment in appendix to appellant brief): "all holders of Units of Participation, whether such holders are members or merely assignees with respect to their Units of Participation."

the Members" and must "perform the terms of this Agreement in good faith." ¶10.(1). Article 10 also required that unitholders bring business opportunities within the scope of the company's business (provision of healthcare anesthesia services) and "cannot engage in such business activity outside of the Company without the prior consent of the unanimous vote of Members." ¶10.1(b). AHC asserts the complaint was an attempt to enforce such obligations by filing suit for the defendants' engaging in anesthesia business outside of AHC without unanimous consent and breaching the operating agreement and fiduciary duties.

In addition to the provisions discussed by the parties, we take note of an additional provision in the operating agreement as well as the agreement's lack of explicit statement about whether unanimous approval – or something else such as a simple majority vote – is specifically required for AHC to file suit and/or retain counsel for this purpose. Although the operating agreement does not specifically and explicitly state whether unanimous approval is required for filing a lawsuit on AHC's behalf, the operating agreement contains a provision indicating that the prevailing party is entitled to attorney fees in the event that a lawsuit to enforce the agreement is filed:

> **14.13 Attorneys fees**. Should the Company or any Unitholder reasonably retain counsel for the purpose of enforcing or preventing breach of any provision of this Agreement, including but not limited to any action or proceeding to enforce any provision of this Agreement or for damages or a declaration of rights, then the prevailing

-18-

> party is entitled, in addition to such other relief as may be granted, to be reimbursed by the losing party for all costs and expenses incurred.

This provision recognizes the possibility that either the company or a unitholder (member or member's assignee) could file a lawsuit to enforce the agreement – which was entered into and executed by its members through their individual owners. Logically, no member would agree to be sued by AHC. In other words, if one member was engaging in conduct prohibited by the agreement, it would be functionally impossible for AHC to file a suit to enforce the agreement if unanimity to so act is required.

Furthermore, given the provision that the prevailing party is entitled to attorney fees from the losing party, it suggests that a lawsuit – even one filed by AHC – might proceed despite a lack of unanimity between members. On the other hand, however, it does not specifically provide that AHC's filing a lawsuit to enforce the agreement requires something other than unanimous approval – such as a simple majority vote – despite another provision (¶7.1(a)) stating that company decisions generally required unanimous approval unless specifically stated otherwise in the agreement.

The parties have each argued that the operating agreement either clearly did or clearly did not require unanimous member approval to hire counsel and file the lawsuit here, based on the various provisions just cited. The appellant

has also argued, in the alternative, that the operating agreement is ambiguous regarding requirements for members to file a lawsuit on AHC's behalf. We agree with the alternative argument that the agreement is ambiguous on this point and reject both parties' arguments to the contrary.

"A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010) (quoting *Cantrell Supply, Inc. vs. Liberty Mut. Ins. Co*, 94 S.W.3d 381, 385 (Ky. App. 2002)).

The trial court's interpretation of the operating agreement as calling for unanimous member approval to file a lawsuit is not a totally unreasonable interpretation – especially given the general provision that decisions be made by unanimous vote unless specifically stated otherwise and specific prohibitions against approving conflict-creating transactions or entering into agency or contractual relationships for AHC without unanimous approval. But we cannot conclude that the trial court's interpretation is the **only** reasonable interpretation of the agreement – since other provisions provide that each member individually has authority to obtain legal services for AHC and that the prevailing party (either AHC or a member) in a lawsuit to enforce the agreement between members is entitled to attorney fees from the losing party.

The trial court should have viewed the pleadings (which here included the attached operating agreement) in the light most favorable to the opposing party when ruling on the CR 12.02 motion to dismiss for failure to state a claim for which relief could be granted.[10] *Netherwood*, 514 S.W.3d at 563. With this in mind and given the *de novo* standard of review, we conclude the trial court erred in concluding that the operating agreement unambiguously required unanimous approval for retaining counsel and filing a lawsuit. At the very least, the operating agreement by itself is ambiguous on this issue.

Specifically, the agreement allows each member to obtain legal services as part of AHC's day-to-day operations (a term which is undefined). And it provides that when either a member or AHC retains counsel to enforce this agreement between its members, the prevailing party is entitled to attorney fees from the losing party.

On the other hand, the agreement requires unanimous consent to enter into contractual relationships or enter into agency relationships with any person or entity – both of which are necessary to retain counsel – and limits each single member from spending $1,500 or more on behalf of AHC in day-to-day expenses.

_____

[10] Although the trial court's order did not specifically state under which ground in CR 12.02 it granted dismissal, at least one of the motions for dismissal indicated that dismissal was sought for failure to state a claim upon which relief can be granted. *See* CR 12.02(f).

Thus, the dismissal of the action based on the stated ground of AHC's lacking standing to sue must be reversed because the agreement does not unambiguously require unanimous member approval to file suit on behalf of AHC to enforce the agreement.[11]

**Attorney Fee Repayment Provision in Amended Order of Dismissal Reversed**

As the dismissal of the lawsuit is hereby reversed, we also summarily reverse the provision in the amended dismissal requiring that KAC and Metric and/or the Zoppoth law firm must "repay all amounts paid to the Zoppoth Law Firm out of AHC's Company bank accounts related to the Zoppoth Law Firm's improper representation of AHC in this matter . . . ." (R., p. 677.) This repayment obligation stems from the trial court's determination that unanimous approval to file the lawsuit was required resulting in AHC's lacking standing to sue. As we conclude that the operating agreement by itself was ambiguous regarding the necessary approval for retaining counsel to file the lawsuit, this specific repayment provision cannot stand at the present juncture.

---

[11] Similarly, we reject appellees' argument that the operating agreement **unambiguously** required unanimous member approval for filing an appeal on behalf of AHC. As the operating agreement does not explicitly and specifically address appeals and given the other contradictory provisions discussed, the operating agreement is ambiguous concerning approval requirements for appeal as well as for filing a lawsuit. We do not definitively conclude that unanimous approval is NOT required for filing a lawsuit or an appeal; we simply conclude that the operating agreement is ambiguous on these matters. We express no opinion concerning any resolution of such ambiguities in further proceedings.

Attorney fee issues may be revisited later in further proceedings and in no way do we intend to constrain the trial court's power to enforce its orders – including orders suspending certain payments by AHC pending further proceedings. But as the dismissal itself is reversed, the attorney fee repayment provision is likewise reversed pending further proceedings.

### AHC Lacks Standing to Appeal from Trial Court's Contempt Finding and Sanctions as to Murphy

Though we conclude that the dismissal must be reversed, we need not disturb the December 2019 contempt order despite arguments in the appellant brief to the contrary. The appellant brief challenges the trial court's finding of contempt against Murphy,[12] pointing out that the trial court had earlier denied the initial

---

[12] Curiously, the trial court's finding **AHC** in contempt does not appear to be explicitly challenged in the appellant brief. But, as no contempt sanctions were imposed on AHC, any error in finding AHC in contempt appears harmless. *See* CR 61.01 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). The appellant brief may (somewhat unclearly) challenge the general prohibition against AHC making payments to its members except for verified clinical time in the December 2019 contempt order in addition to the more specific provision suspending Murphy's ability to write checks for AHC. (The provision suspending AHC's payments to members except for verified clinical time appears to be a reiteration of a statement in the October 2019 amended accounting order, rather than a contempt sanction.) But shortly after the December 2019 contempt order was entered, the trial court then entered a final and appealable order dismissing the lawsuit entirely – making the continued application of its order suspending such payments questionable. And the February 2020 order denying the motion for reconsideration of contempt and dismissal did not explicitly provide for the continued suspension of AHC's payments. In short, as we reverse the dismissal of the action, the trial court and parties may revisit issues regarding any need for an accounting and/or suspension of payments. Our understanding is that such payments had been initially, generally suspended pending completion of an accounting. The record reflects that a mutually agreeable accountant had been selected by the parties to perform the accounting in early October 2019 – about the same time that the trial court issued its amended accounting order. There appears to be no indication in the written record that the accounting was completed before the lawsuit was ultimately dismissed.

-23-

motion to hold in contempt. But the appellant brief fails to cite any authority indicating why the trial court was bound by its ruling on the initial contempt motion in ruling on the renewed motion for contempt with its new allegations of further contumacious action – including further improper payments and failures to comply with court orders.

More importantly, the appellant brief fails to cite any authority indicating how the appellant – purportedly AHC – has standing to appeal from the trial court's finding **Murphy** to be in contempt and sanctioning him. Kentucky law clearly provides: "A limited liability company is a legal entity distinct from its members." KRS[13] 275.010(2). Logically, AHC is also a separate entity from an individual owner of one of its member LLCs. As a separate entity from Murphy, AHC is not injured by contempt findings and sanctions against Murphy – especially sanctions requiring him to repay it certain amounts.

Precedent indicates that courts are hesitant to afford litigants relief for judgments which have not caused the litigants any injury. *See American States Ins. Co. v. Audubon Country Club*, 650 S.W.2d 252, 254 (Ky. 1983) (affirming judgment despite an error due to lack of prejudicial effect: "If one is not injured by a judgment, he cannot complain of its irregularity."). And we question how any contempt finding or sanction against Murphy was not harmless to AHC. *See* CR

---

[13] Kentucky Revised Statutes.

61.01 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

We recognize that the appellee brief did not specifically argue that AHC (as a separate entity) lacked standing to appeal from Murphy's contempt sanctions – using these particular terms.[14] But they asserted that the appellant brief arguments advanced others' financial interests instead of AHC's – essentially challenging AHC's standing to appeal from sanctions against others. The appellant did not respond to this assertion as no reply brief was filed.

Furthermore, we have authority and even a responsibility to affirm judgments for any reason supported by the record. *Mark D. Dean, P.S.C. v. Commonwealth Bank & Trust Co.*, 434 S.W.3d 489, 496 (Ky. 2014) ("If an appellate court is aware of a reason to affirm the lower court's decision, it must do so, even if on different grounds.").

Though prior precedent held that appellate courts could not properly raise questions of standing on their own motion, our Supreme Court has since limited this prior holding to questions of statutory standing – namely, whether one had standing to sue under particular statutes. *Commonwealth, Cabinet for Health*

---

[14] The appellees argued in their brief that AHC lacked standing to appeal due to lack of unanimous approval of its membership.

-25-

*and Family Services, Department for Medicaid Services v. Sexton by and through Appalachian Regional Healthcare, Inc.*, 566 S.W.3d 185, 191-92 (Ky. 2018) (citing *Harrison v. Leach*, 323 S.W.3d 702, 703 (Ky. 2010)). Our Supreme Court specifically held that all Kentucky courts had authority to ascertain whether litigants had constitutional standing to sue. *Id.* at 192. And without our going into detailed discussion of constitutional standing, our Supreme Court recognized that generally constitutional standing to sue required that the plaintiff have suffered some type of injury. *Id.* at 196.

Our Supreme Court also discussed other types of standing such as prudential standing – a principle recognized in federal courts that: "a party generally may assert only his or her own rights and cannot raise the claims of third parties not before the court, i.e. the prohibition against 'third-party standing[.]'" *Id.* at 193.

Our Supreme Court did not directly discuss issues of standing to appeal – aside from issues stemming from disputes about standing to sue – in *Sexton*, despite alluding to a law review article about standing to appeal in federal courts. *See id.* at 192 n.16 (citing Joan Steinman, *Shining a Light in a Dim Corner: Standing to Appeal and the Right to Defend a Judgment in the Federal Courts*, 38 GA. L. REV. 813 (2004)). Nonetheless, we perceive nothing in *Sexton* to forbid our application of principles of prudential standing in appeals –

particularly not allowing parties to assert the rights of others not before the court as parties to the appeal.

AHC may have had standing to file its lawsuit as previously discussed. However, AHC lacked standing to challenge contempt findings or sanctions against Murphy either in the trial court or on appeal due to lack of apparent injury to AHC from Murphy's contempt sanctions. And, as previously discussed, AHC and Murphy are distinct entities, not one indivisible entity. In short, AHC lacks standing to appeal from Murphy's contempt sanctions and we decline to hear AHC's appeal from Murphy's contempt sanctions since AHC is the sole appellant. We do not issue advisory opinions as to the propriety of contempt sanctions against a person who is not a party to the appeal.

In the alternative, the appeal from Murphy's contempt sanctions could arguably necessitate dismissal for failure to name an indispensable party as an appellant – Murphy, the subject of the contempt sanctions on appeal. Typically, dismissals of appeals for failure to name indispensable parties concern failure to name appellees. *See, e.g.*, *City of Devondale v. Stallings*, 795 S.W.2d 954 (Ky. 1990). But here dismissal of the appeal from contempt sanctions seems appropriate as Murphy (a separate legal entity from AHC) did not appeal from the contempt sanctions entered against him.

Despite the lone appellant being identified as AHC on the notice of appeal, the appellant brief challenges provisions in the trial court's December 2019 contempt order which impose obligations on **Murphy** to repay AHC for certain expenses and which suspend **Murphy's** ability to write checks on AHC accounts. But Murphy was not named as an appellant in the notice of appeal nor did he separately, personally appeal from the contempt finding and sanctions against him. Given AHC's lack of standing to appeal from Murphy's contempt sanctions and Murphy himself not appealing from the contempt sanctions entered against him, we decline to reach the merits of these provisions regarding Murphy's responsibilities in the trial court's contempt order.

Having concluded that the dismissal of the action under CR 12.02 for lack of standing was reversible error but that AHC lacks standing to challenge Murphy's contempt sanctions, we decline to address other arguments in the briefs as unnecessary to our resolution of this appeal or as lacking in merit.

## CONCLUSION

For the reasons stated herein, we **AFFIRM** the trial court's contempt order but **REVERSE** the dismissal of the action and **REMAND** for further proceedings in conformity with this Opinion.

ALL CONCUR.

BRIEF FOR APPELLANT:

Scott P. Zoppoth
Louisville, Kentucky

BRIEF FOR APPELLEE:

Craig C. Dilger
Thomas G. French
Stephen Sherman
Louisville, Kentucky