# Jones v. Grief.

April 21, 1939.

Joe L. Price, Judge.

L. B. Alexander for appellant.

Jack E. Fisher and Cas B. Crossland for appellee.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

The appellant, J. V. Jones, is engaged in the business of lending money in the city of Paducah. The appellee, H. G. Grief, was the manager of appellant's office located at 316½ Broadway. The office was on the

second floor, and, in the room where the business was conducted, there was a partition nine or ten feet high separating the portion of the room allowed for customers from the portion occupied by appellee. There was a door in the partition with a lock thereon. There were also two openings about eighteen inches square through which business was transacted between appellee and borrowers. These two openings were about six feet apart. On the office side of the partition, there was a counter about thirty inches wide and level with the bottom of the opening. Under the counter and about midway between the two openings was a money drawer with a bell thereon which rang when the drawer was opened. The drawer contained a top compartment wherein coins were kept and a lower compartment for bills. In order to reach the bills it was necessary to slide the top compartment back. The coins and bills were kept in an iron safe at night and placed in the money drawer by appellee when he opened for business in the morning. One J. R. Moss, who was engaged in the real estate business in an adjoining office, frequently collected rents which were placed in envelopes and were likewise kept in the iron safe but not intermingled with the money of appellant. In September, 1934, currency to the amount of approximately $300, including some thirty odd dollars belonging to clients of Mr. Moss, disappeared. Appellee says that he took the money out of the safe that morning and put it in the money drawer. He does not recall that anyone else was in the office on the morning when the money disappeared. On the day in question, appellee left the office to get his lunch about noon, and Mr. Barker, who was collector for the concern and worked on the outside most of the time, kept the office while appellee was gone. Mr. Barker discovered that the coins were in the cash drawer but that the bills had disappeared. When appellee's attention was called to this on his return, about one o'clock, he notified appellant, who in turn called in the detectives of the city police department. The officers testified that there was no evidence of any break-in of the premises. Two days later, appellant discharged the appellee.

It is alleged in the petition that, in September, 1936, two years after the occurrences detailed above, the appellant spoke, falsely and maliciously, of and concerning appellee:

"It was not a break-in, Grief just took the money

himself and he got the money all right, and took some money there that belonged to Moss that was in the safe that he (defendant) had nothing to do with it, but that Grief took it any way."

At the trial, one Milas Stewart testified that the appellant said to him in September, 1936, substantially the words alleged in the petition. The jury returned a verdict in favor of appellee in the sum of $1,000. This appeal is prosecuted from the judgment entered pursuant to that verdict. Appellant insists (1) that the court erred in overruling his demurrer to the petition, (2) that he was entitled to a peremptory instruction, (3) that the court admitted incompetent testimony, (4) that the court erred in its instructions to the jury, and (5) that the attorneys for appellee conducted themselves improperly.

Appellant insists that the decision in Renaker v. Gregg, 147 Ky. 368, 144 S. W. 89, demonstrates the insufficiency of the petition and that the court should therefore have sustained the demurrer thereto. In that case, the words charged were, in part, "Joe Gregg stole a sheep from me out of my pasture." On the trial the proof was that Renaker told a witness that Gregg "took" a sheep out of his pasture. The court said (144 S. W. page 90):

"There is, of course, a plain and well-understood difference in the meaning of the words 'stole' and 'took.' In its ordinary use, and by common acceptation, the word 'stole' imports a crime; and to say of a person that he 'stole' an article is to accuse him of theft and charge him with being a thief, and consequently with having committed the crime of larceny. And so it was not necessary to aver that Renaker intended to accuse, or that those who heard Renaker utter the words charged in the petition understood him to accuse, Gregg of the crime of larceny, because the words in their ordinary and usual meaning imported this charge, and were per se actionable. Barr v. Gaines, 3 Dana, 258; Hume v. Arrasmith, 1 Bibb, 165, 4 Am. Dec. 626. If the words charged in the petition had been: 'Joe Gregg "took" a sheep from me out of my pasture, and put it over the fence out of my place, and I caught it and put it back. There was wool on fence where he (meaning Gregg) put it over, and there was salt on the ground. If I could make a witness out of that

little boy of mine, I would make it warm for Gregg' —*it is very questionable if the action could have been maintained,* even if the words were accompanied by averments charging that Renaker, in the use of this language, intended to and did mean to charge Gregg with 'stealing' a sheep, and with the crime of larceny, and that the persons in whose presence and hearing he uttered the words understood him to so mean, because these words do not necessarily, or in their usual acceptation, import the commission of larceny or any crime or any offense involving moral turpitude, as a person might get or take a sheep out of a pasture, and might put salt on the ground to catch it, and yet not be guilty of any wrongdoing.'' (Our italics.)

It is plain, of course, that the statement of the Court in Renaker v. Gregg, supra, that the right to maintain an action would be questionable if the word ''took'' instead of the word ''stole'' had been averred in the petition, was obiter to the extent that it was unnecessary to decide in that case that the word ''took,'' when explained in the colloquium or in the innuendo, might not be slanderous. The very question was determined to the contrary in McGowan v. Manifee, 7 T. B. Mon. 314, 23 Ky. 314, 18 Am. Dec. 178. In that case, one of the counts relied upon was the use of the words ''you did take it.'' The Court said:

''Without the colloquium, the words charged in these counts would be unintelligible; but if spoken, as alleged, in reference to the subject of the conversations between the plaintiff and Day, then, they did imply a charge of felony, and were actionable.''

In Bornman v. Boyer, 3 Binn. (Pa.) 515, 5 Am. Dec. 380, the court said:

''The error assigned in this case is, that the words laid in the declaration are not actionable. The defendant contends that he only said, that the plaintiff took his calfskin, and not that he stole it, and that the *innuendo* cannot alter the meaning of the words. Where words will bear several meanings, the plaintiff has a right to aver by an *innuendo,* the meaning with which he conceives they were spoken, and it is for the jury to decide whether he is right.''

In Hinesley v. Sheets, 18 Ind. App. 612, 48 N. E. 802, 63 Am. St. Rep. 356, the words charged were: ''I

know he [Sheets] took wheat that did not belong to him.'' In sustaining the sufficiency of the complaint, the court said:

> ''Appellee might have taken wheat that did not belong to him, without committing a crime. He might have taken it with the permission and consent of the owner. And the mere allegation of the words spoken as stated in the complaint, without the colloquium and innuendo, would be insufficient. In the complaint, however, it is distinctly averred that appellant meant and charged, by the speaking of said words, that appellee was guilty of the crime of larceny, and that appellee had feloniously taken, stolen, and carried away the goods and chattels, the property of appellant, and that the persons so hearing the words understood appellant so to mean. We think each paragraph of complaint in the cause was sufficient.''

In the petition before us, it expressly appears that the words were spoken by the appellant concerning the appellee in connection with the theft of money from the State Finance Company which was owned and operated by appellant, and of which appellee was an employee. It further is alleged that the words were spoken falsely and maliciously ''meaning that plaintiff had committed the offense and crime of stealing money.'' The petition was sufficient.

Appellant insists that there was a variance between the words as laid in the petition and as proved at the trial. The witness Milas Stewart testified:

> ''He said that was no break-in at that time, that the money that was taken out of there was taken out of the cash drawer and some out of the safe that belonged to Mr. Moss, and that nobody else could take it but Grief, that he had a key to the office and the safe.''

In response to the question: ''I will ask you if, at any time during this conversation, he (appellant) said that Grief took that money?'' Stewart responded, ''Yes, sir.'' It was formerly the rule that the precise actionable words laid in the declaration must be proven and this rule was enforced with great strictness. It is now sufficient if the plaintiff, in such an action, proves that the defendant uttered words substantially the same as those alleged in the petition and the precise words

need not be established. 17 R. C. L. 421. The essence of the claim is the slander and not the exact phraseology. There is no substantial variance between the words charged and the words proved. When considered in connection with the testimony concerning the circumstances of their utterance, there can be no doubt that they were intended to charge appellee with a crime and that they would be so understood by one who heard them. As said in McGowan v. Manifee, supra:

"Words are to be taken, neither in the milder, nor in the more grievous sense, but in that sense in which they would be understood by those who heard them; the judge ought not to torture them into a charge of guilt, nor explain them into innocence, contrary to their obvious import."

Appellant complains of various questions asked the witness Milas Stewart in an effort to lead him into testifying to the exact words charged in the petition. An examination of the record shows, however, that the trial court sustained appellant's objections to these questions in every instance where they were improperly framed. We can find no instance in the record wherein incompetent evidence was admitted over appellant's objection.

Appellant offered an instruction to the effect that the jury had a right to consider all of the proven facts in the case in mitigation of damages, if any, to the appellee. He urges that the trial court erred in refusing to give this instruction. There was no plea in the petition of any special damage, and the instruction given on general damages was substantially in the form approved by this Court in Ray v. Shemwell, 186 Ky. 442, 217 S. W. 351. The jury undoubtedly considered all of the proven facts in fixing the damages and the instruction offered would add nothing to what was already before them. We conclude, therefore, that the refusal to give the instruction was not prejudicial error. In Marksberry v. Weir, 173 Ky. 316, 190 S. W. 1108, 1110, we said:

"Furthermore, mitigating facts may be shown under the general issue, because they would tend to negative the charge of malice and define the extent of actual damages done to the plaintiff."

It was held in that case that an instruction limiting the consideration of certain mitigating circumstances to punitive damages alone was erroneous but not prejudi-

cial. Strictly speaking, the facts relied on by appellant in the case at bar were aimed rather at showing that appellee had not been damaged at all than in mitigation of damages incurred, so that the instruction, even if proper, was unnecessary.

Appellant complains of the misconduct of the attorney for appellee in his argument to the jury. This argument is copied in the record. Counsel was more personal than the ethics of the situation demanded, but we are unable to say that his argument so far transcended legitimate comment as to require a reversal of the judgment.

There can be no doubt but that the verdict was a generous one under the circumstances; but in actions of this character the amount recoverable is peculiarly a matter for the jury and it is only when the damages allowed "are so great that it may reasonably be presumed that in estimating them the jury did not exercise a sound discretion, the court may set aside the verdict and award a new trial." 17 R. C. L. 444.

Judgment affirmed.