Joanne SMITH, Appellant,

v.

Odell MARTIN, in his Official capacity as Mayor of Horse Cave, Kentucky, Appellee.

No. 2009–CA–002226–MR.

Court of Appeals of Kentucky.

Feb. 4, 2011.

C. Mike Moulton, Elizabethtown, KY, for appellant.

Robert D. Hudson, Florence, KY, Shawn Rosso Alcott (argued), Bowling Green, KY, for appellee.

Before TAYLOR, Chief Judge; STUMBO, Judge; SHAKE,[1] Senior Judge.

## OPINION

TAYLOR, Chief Judge.

Joanne Smith brings this appeal from a November 17, 2009, summary judgment dismissing Smith's defamation claims against Odell Martin. We affirm in part, vacate in part, and remand.

Martin is the mayor of Horse Cave, Kentucky.[2] In that role, he presided over a special meeting of the city council on July 31, 2008. During the city council meeting, members of the public expressed concerned over the removal of trees at Horse Cave Cemetery. In particular, Smith, Martin's predecessor as mayor of Horse Cave and then a candidate for city council, complained about Martin having the trees removed without informing the public. In response thereto, the following exchange took place between Smith and Martin:

---

1. Senior Judge Ann O'Malley Shake sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. Horse Cave, Kentucky, is recognized as a city of the fourth class. KRS 81.010. Odell Martin, who was a former city council member, was elected mayor in the fall of 2006 and assumed the position January 1, 2007. Martin defeated Joanne Smith, who had served as mayor from 1999—2006.

[Martin] "May I ask you a question?"

[Smith] "Yes, certainly."

[Martin] "You were the Mayor in '06 between August 31 and December 1 of '06. When you were Mayor, you purchased $30,000 worth of equipment [for the Police Department]."

[Smith] "Is that on the agenda?"

[Martin] "I'm conducting the meeting."

[Smith] "The auditor will answer your question."

[Martin] "Is in [sic] secret."

[Smith] "I'm sorry; I'm not going to respond to you. This is not on the agenda. You are sitting there trying to set me up."

[Martin] "No, no. Maybe you can tell us where this $30,000 worth of equipment is."

[Smith] "Ask the auditor."

[Martin] "I just thought I would ask you. I'd like to find that equipment if I could."

After the city council meeting, Martin distributed a publication called *News from Horse Cave City Hall* (Horse Cave Newsletter). Martin published the newsletter regularly to inform citizens of Horse Cave about activities of city council. In a subsequent edition of the newsletter, the following excerpt of an article appeared recounting the events of the July 31 city council meeting:

Former Mayor JoAnne Smith spoke out against Martin's actions. She said the tree near her future graveside was one of those cut down. She was upset because she wanted to be buried under a tree and had picked that spot several years ago. 'But what upset me the most was that everything happens around here in secret. Nobody—the public [or] council—knows what's going on, and I think we need to keep the people in-

formed, then maybe you won't have so many complaints.'

Martin asked former Mayor Smith, "May I ask you a question." She said "Yes." Mayor Martin asked, "Beginning August 31st and ending approximately December 12th, 2006[,] during your term as mayor you purchased $30,000 in equipment for the police department. I cannot find that equipment. Could you tell me where that equipment is?"

[Former] Mayor Smith said that is not on the agenda and you can ask the auditor about that.

"I'm in charge of the meeting. Could you please tell me where that equipment is?" Martin asked.

Former Mayor Smith said, "You are not going to entrap me."

Mayor Martin asked, "Could you please help me find the equipment?"

Later in 2008, Smith filed a complaint against Martin in the Hart Circuit Court alleging libel and slander in relation to Martin's oral statements directed to Smith during the city council meeting and publication of the newsletter recounting Martin's statements directed to Smith during the city council meeting. Eventually, Martin filed a motion for summary judgment alleging that his statements were not defamatory and were privileged. Martin asserted he was entitled to absolute immunity for any statements made during the city council meeting. The circuit court agreed and dismissed Smith's defamation claims by summary judgment entered November 17, 2009. This appeal follows.

■ Smith contends that the circuit court erred by rendering summary judgment dismissing her defamation claims against Martin. Summary judgment is proper where there exists no material issue of fact and movant is entitled to judgment as a matter of law. When ruling

upon a motion for summary judgment, all facts and inferences are to be viewed in a light most favorable to the nonmoving party. Kentucky Rules of Civil Procedure 56.02; *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991).

To establish a claim for defamation, the following elements must exist: "[1.] defamatory language, [2.] about the plaintiff, [3.] which is published, and [4.] which causes injury to reputation." *Stringer v. Wal–Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky.2004)(footnote omitted). A claim of defamation may be defeated by establishing the truth of the matter asserted which is an absolute defense. Additionally, a defamation claim may be defeated by assertion of a "privilege." A privilege is recognized as a defense to a defamation claim; the defense may be either absolute or qualified. An absolute privilege affords a defendant a complete defense to a claim of defamation; whereas, a qualified privilege only affords a defendant a conditional defense to a claim of defamation. Both privileges are pivotal to the resolution of this appeal.

In her complaint, Smith claimed that Martin defamed her by: (1) Martin's oral statements directed to Smith during the city council meeting, and (2) Martin's publication of the Horse Cave Newsletter recounting Martin's statements directed to Smith during the city council meeting.[3]

For the following reasons, we conclude that Martin's statements directed toward Smith during the city council meeting are absolutely privileged and that Martin's publication of the Horse Cave Newsletter recounting Martin's statements during the city council meeting may be entitled to a qualified privilege. In analyzing the above claims of defamation, we observe that the existence of a privilege presents an issue of law, and our review proceeds *de novo. Stringer*, 151 S.W.3d 781.

In *Jacobs v. Underwood*, 484 S.W.2d 855, 857 (Ky.1972), the Supreme Court recognized that the General Assembly enacted KRS 84.050 and thereby bestowed upon members of secondary legislative bodies (city commissions) an "absolute privilege under which they cannot be liable for statements made during a debate before a formal meeting of the assembly." KRS 84.050 was eventually repealed, but it was substantively reenacted in KRS 83A.060(15), which reads:

> For anything said in debate, legislative body members shall be entitled to the same immunities and protections allowed to members of the General Assembly.

Under KRS 83A.060(15), members of secondary legislative bodies, such as city councils, acquired an absolute privilege from liability for statements made during such meetings.[4]  *See Jacobs*, 484 S.W.2d

---

**3.** Historically, the common law required that the "precise actionable words" of the defamatory conduct be set forth in the complaint. *Jones v. Grief*, 279 Ky. 579, 131 S.W.2d 487 (1939). The modern rule is to allow "relaxation of the strict common law rules of pleading[.]" 50 Am.Jur.2d, *Libel and Slander* § 437 (1995). Despite relaxation of the rule, it is still incumbent upon plaintiff to prove the defamatory conduct as alleged in the complaint. *Jones*, 131 S.W.2d 487. In the case *sub judice*, Smith's complaint merely raised two claims of defamation: (1) Martin's state-

ments to Smith during a 2008 city council meeting, and (2) Martin's publication of those statements in a 2008 newsletter from the mayor's office to residents of Horse Cave. Smith later attempted to raise two additional claims of defamation. As these two additional claims were not presented in the complaint and Smith never sought to amend the complaint, we decline to address same herein.

**4.** In *Godman v. City of Fort Wright*, 234 S.W.3d 362, 370 (Ky.App.2007), the Court commented that "absolute legislative immunity cannot be extended to municipal legisla-

855; 13 David J. Leibson, *Kentucky Practice—Tort Law* § 15:9 (2010); *Restatement (Second) of Torts*, § 590 (1977). The absolute privilege enjoyed by members of secondary legislative bodies is concomitant to the absolute privilege extended to members of the Kentucky General Assembly by Section 43 of the Kentucky Constitution. *See Jacobs*, 484 S.W.2d 855. As with the absolute privilege contained in Section 43 of the Kentucky Constitution, the ambit of the absolute privilege contained in KRS 83A.060(15) is to be liberally construed and extends broadly to the publication of defamatory matter while performing legislative duties. *Restatement (Second) of Torts* § 590 (1977); *Kraus v. Ky. State Senate*, 872 S.W.2d 433 (Ky.1994); *Wiggins v. Stuart*, 671 S.W.2d 262 (Ky.App.1984).

In this case, Martin was mayor of Horse Cave. Horse Cave is organized and governed by a mayor-council plan. KRS 83A.030. Under the mayor-council plan, the mayor presides at city council meetings and casts a vote in case of a tie. KRS 83A.130(5). When Martin presides over a city council meeting, he is performing a legislative duty and should be entitled to the same absolute privilege afforded other members of the city council under KRS 83A.060(15). As Martin's statements directed at Smith occurred during a city council meeting, these statements are absolutely privileged, and Martin cannot be liable for same in this defamation action.

■ However, the defense of absolute privilege is not available to Martin in regard to his publication of the Horse Cave Newsletter. Rather, we must look to the qualified privilege contained in KRS 411.060.

KRS 411.060 provides, in relevant part:

The publication of a fair and impartial report of any proceeding before any state or city legislative or executive body, board or officer, or the whole or a fair synopsis of any bill, report, resolution, bulletin, notice, petition, or other document presented, filed, or used in any proceeding before any state or city legislative or executive body, board or officer, shall be privileged, unless it is proved that the publication was maliciously made.

Under KRS 411.060, the publication of a "fair and impartial" report of a city council meeting is privileged unless such publication was "maliciously made." 13 David J. Leibson, *Kentucky Practice—Tort Law* § 15:19 (2010). Simply stated, KRS 411.060 creates a qualified privilege. The privilege is qualified or conditioned upon the report being fair and accurate and not being maliciously made. If the report is fair and accurate and not maliciously made, the publication of the report is considered privileged and will defeat the defamation claim. And, the report is considered "maliciously made" if it is published "solely for the purpose of causing harm to the person defamed." *Pearce v. Courier-Journal*, 683 S.W.2d 633, 636 (Ky.App. 1985) (citation omitted). The determination of whether the report was fair and impartial or was maliciously made presents an issue of fact. *Kremer v. Kopmeyer*, 418 S.W.2d 237 (Ky.1967).

In our case, the qualified privilege created in KRS 411.060 encompasses Martin's publication of the Horse Cave Newsletter recounting Martin's statements directed to Smith during the city council meeting. As the circuit court did not determine whether the qualified privilege of KRS 411.060 was applicable, there has been no determi-

---

tors." We observe that this comment was dicta, and the Court was not presented with

KRS 83A.060(15).

nation of whether material issues of fact exist; i.e., whether the newsletter represented a fair and accurate report and whether publication of the newsletter was maliciously made. Consequently, this matter must be remanded for such determination.[5]

In sum, we hold that members of secondary legislative bodies are entitled to an absolute privilege for statements made during official meetings of those bodies under KRS 83A.060(15). At the Horse Cave city council meeting, Martin was performing legislative duties; thus, Martin's statements directed to Smith at the meeting are absolutely privileged. As such, the circuit court properly rendered summary judgment dismissing Smith's defamation claim based upon these statements. We also conclude that KRS 411.060 provides a qualified privilege for the publication of a report recounting events at a city council meeting. Martin's publication of the Horse Cave Newsletter recounting statements made by Martin to Smith comes within the ambit of KRS 411.060. We are, nevertheless, unable to determine whether the qualified privilege operates as a defense to Smith's defamation claim in this case. Under KRS 411.060, the determination of whether the Horse Cave Newsletter's report was fair and accurate or was maliciously made presents a factual issue, which was not addressed by the circuit court. Thus, we remand Smith's defamation claim as to the publication of the Horse Cave Newsletter and affirm the dismissal of her defamation claim as to Martin's statements at the city council meeting.

We view Smith's remaining contentions of error to be without merit or moot.

For the foregoing reasons, the summary judgment of the Hart Circuit Court is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

ALL CONCUR.

---

5. Our opinion should not be misconstrued as holding that material issues of fact exist. We only hold that no such determination has been made by the circuit court and remand upon this basis.