RENDERED: AUGUST 24, 2023
TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0254-DG

NEW ALBANY MAIN STREET PROPERTIES,　　　　　　　　　　APPELLANTS
LLC D/B/A PORT OF LOUISVILLE;
GREGORY P. CANTRELL; RON SILER; AND
JOE TEGART


　　　　　　　　　　ON REVIEW FROM COURT OF APPEALS
V.　　　　　　　　　　　　NO. 20-CA-0562
　　　　　　　　JEFFERSON CIRCUIT COURT NO. 20-CI-006650


R. WAYNE STRATTON, CPA; AND JONES,　　　　　　　　　　APPELLEES
NALE & MATTINGLY PLC


**OPINION OF THE COURT BY JUSTICE THOMPSON**

**<u>AFFIRMING</u>**

New Albany Main Street Properties, LLC d/b/a Port of Louisville, Gregory

P. Cantrell, P. Ron Siler and Joe Tegart (collectively Port of Louisville), appeal

from the motion to dismiss which was granted to R. Wayne Stratton, CPA and

Jones, Nale & Mattingly PLC (collectively Stratton), and affirmed by the

Kentucky Court of Appeals. Port of Louisville argues that the "judicial

statements privilege"[1] should not apply to bar its suit and it has a viable cause

of action for professional malfeasance. We disagree and affirm.

---

[1] The term "judicial statement(s) privilege" appears to be specific to Kentucky, although the Kentucky Court of Appeals has also used the more widespread term "judicial proceedings privilege." *See, e.g., Smith v. Hodges*, 199 S.W.3d 185, 194 (Ky. App. 2005); *J.S. v. Berla*, 456 S.W.3d 19, 25 (Ky. App. 2015). Throughout the rest of the United States this privilege appears to most commonly be referred to as the "litigation privilege" although it may alternatively be called the "judicial privilege" or

# I. FACTUAL AND LEGAL BACKGROUND

Port of Louisville leases its facility from the Louisville and Jefferson County Riverport Authority (Riverport Authority). On June 10, 2019, Riverport Authority filed a lawsuit before the Jefferson Circuit Court seeking to terminate Port of Louisville's lease based on its allegations that Port of Louisville breached its lease on a variety of grounds, including that Port of Louisville failed to conduct its business "in accordance with all federal, state and local laws."[2] Riverport Authority argued that Port of Louisville's breach entitled Riverport to terminate the lease. Port of Louisville counterclaimed.

By agreed order, on October 31, 2019, the trial court action was stayed while these claims were referred to arbitration. The order referring the matter to arbitration provided that "during this stay, the Court shall retain jurisdiction to issue any order[.]"

During arbitration, Riverport Authority submitted expert reports prepared by Stratton and he also testified on behalf of Riverport Authority. In

---

the "defamation privilege." Douglas R. Richmond, *The Lawyer's Litigation Privilege*, 31 Am. J. Trial Advoc. 281, 283 (2007).

[2] Riverport Authority argued Port of Louisville also breached its lease by: (1) failing to maintain the port facility and failing to provide repairs to the property; (2) disposing of eight and one half years of maintenance inspection records; (3) operating the property in a manner contrary to the safety standards under OSHA; (4) maintaining the crane in an unsafe manner; (5) accumulating trash and junk around the port facility; and (6) failing to maintain an effective marketing, promotional, advertising and sales campaign for the port facility. Port of Louisville argues that Riverport Authority was looking for any excuse to terminate its lease so that it could enter into a new lease with Watco Companies. Port of Louisville has a pending federal lawsuit against Watco and the then-Riverport president.

his reports and testimony, Stratton claimed that Port of Louisville had been systematically under-reporting income on its tax returns by more than $6 million dollars over a four-year period, resulting in it failing to make proper payments to Riverport Authority. Port of Louisville was able to establish through its own expert that Stratton incorrectly counted outgoing checks as incoming income rather than expenditures. Riverport Authority then formally withdrew Stratton's reports and testimony and retracted that ground for breach of lease.

Ultimately, the arbitrator submitted a reasoned opinion to the trial court in which he considered all of Port of Louisville's submitted grounds regarding breach of the lease and found that Port of Louisville had not breached the lease. Riverport Authority then filed a motion to vacate the arbitration award, arguing the arbitrator exceeded his authority. Port of Louisville filed a competing motion to confirm the arbitration award. The trial court resolved the matter by issuing an opinion and order confirming the arbitrator's decision.

Based on what occurred during the arbitration, on October 18, 2020, Port of Louisville filed a complaint in the Jefferson Circuit Court against Stratton for defamation and professional malfeasance. Port of Louisville argued Stratton's reports and testimony regarding tax fraud were defamatory as they "impugned the honesty and integrity of plaintiffs Cantrell, Siler and Tegart, owners of Port of Louisville."

Stratton filed a motion to dismiss, arguing the complaint failed to state a claim upon which relief can be granted because all claims were barred by the

3

judicial statements privilege, and Stratton could not be professionally negligent toward Port of Louisville because Stratton did not owe the Port of Louisville any duty.

The trial court granted the motion to dismiss. The Court of Appeals agreed and affirmed. We granted discretionary review and set the matter for oral argument.

## II. LEGAL ISSUES

We review a motion to dismiss for failure to state a claim *de novo* as it presents a pure question of law. All alleged facts are construed in favor of the plaintiff. *Brown-Forman Corp. v. Miller*, 528 S.W.3d 886, 889 (Ky. 2017). Additionally, the existence of a privilege presents an issue of law and is also subject to *de novo* review. *Smith v. Martin*, 331 S.W.3d 637, 640 (Ky. App. 2011).

We consider (1) the scope of the judicial statements privilege, whether further discovery is needed, whether the privilege applies to court-ordered arbitrations and, if it does, whether experts should be subject to a different standard than lay witnesses; and (2) whether the Port of Louisville can pursue a cause of action for professional malfeasance against Stratton.

### A. Judicial Statements Privilege

"In certain circumstances . . . otherwise defamatory-per-se communications are allowed because the societal interest in the unrestricted flow of communication is greater than the private interest." *Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014). Defamation claims may thereby

4

be defeated when the party alleged to have made defamatory statements can assert either an absolute or qualified privilege. *Smith*, 331 S.W.3d at 640.

The prevailing rule regarding the judicial statements privilege in Kentucky is that communications made pursuant to judicial proceedings are absolutely privileged even if otherwise defamatory. *Maggard v. Kinney*, 576 S.W.3d 559, 567 (Ky. 2019); *Schmitt v. Mann*, 291 Ky. 80, 163 S.W.2d 281, 283 (1942). This includes pleadings and statements of witnesses. *Maggard*, 576 S.W.3d at 567. "The emphasis is on judicial (or quasi-judicial) proceedings." *Id.*

> A communication must fulfill two requirements in order to fall within the ambit of the judicial statements privilege. First, the communication must have been made "preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of a judicial proceeding." *General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1127 (6th Cir.1990) (citing *Restatement (Second) of Torts* § 587 (1977)). Second, the communication must be material, pertinent, and relevant to the judicial proceeding.

*Morgan & Pottinger, Attys., P.S.C. v. Botts*, 348 S.W.3d 599, 602 (Ky. 2011), *overruled on other grounds by Maggard*, 576 S.W.3d at 570. The privilege is limited to communications and does not cover conduct. *Halle v. Banner Indus. of N.E., Inc.*, 453 S.W.3d 179, 185 (Ky. App. 2014).

The doctrine behind the judicial statements privilege "rests upon public policy 'which looks to the free and unfettered administration of justice, though, as an incidental result, it may, in some instances, afford an immunity to the evil-disposed and malignant slanderer.'" *Schmitt*, 163 S.W.2d at 284 (quoting *Bartlett v. Christhilf*, 69 Md. 219, 14 A. 518, 520 (1888)).

## 1. Further discovery was not warranted before dismissal could properly be granted.

Port of Louisville speculates that "discovery may reveal that defendants have communicated their defamatory statements concerning Port of Louisville outside the judicial arena, i.e., to persons other than the parties to the case and the arbitrator or before the proceedings." (Emphasis omitted). However, Port of Louisville failed to allege in its complaint that any defamatory statements occurred outside of the arbitration proceedings. We will not require additional discovery so that Port of Louisville can go on a fishing expedition to try to establish other allegedly defamatory statements. The possibility of the existence of other as of yet unknown and unpled defamatory statements not subject to the privilege cannot save this cause of action; it will continue or be extinguished based upon the statements offered during the arbitration which were the only potentially tortious acts alleged in the complaint.

## 2. The judicial statements privilege applies to arbitrations within the auspices of a trial.

Port of Louisville argues that this "private arbitration" should not be considered a judicial proceeding and, therefore, the privilege should not apply. We disagree with both that characterization of this specific arbitration and Port of Louisville's conclusion.

The statements which Port of Louisville argues are defamatory, were prepared for and submitted pursuant to a court-ordered arbitration. The trial court stated in the order of arbitration that it maintained jurisdiction, the opinion from the arbitrator was submitted to the trial court, and the trial court

6

confirmed the arbitration award. Therefore, this arbitration was conducted as part of a judicial proceeding and squarely falls within the judicial statements privilege.

In reaching this conclusion, we do not decide that all arbitrations come within the judicial statements privilege. That question is not before us. We are solely concerned here with whether this specific type of arbitration is subject to the privilege. We hold that statements made pursuant to court-ordered arbitrations are protected by the judicial statements privilege to the same extent as statements made in other court proceedings.

**3. A different rule is not required for expert witnesses.**

Port of Louisville's fallback position is that if this arbitration is subject to the judicial statements privilege, "expert witnesses who make defamatory statements in arbitration should only be entitled to a qualified privilege for statements made in good faith," thus limiting the full scope of the existing judicial statements privilege to lay witness statements. Port of Louisville further argues that without such a limitation, paid experts "have every incentive to testify as their paying client wishes even if they know their testimony has no basis, since they know they will face no legal liability for their conduct."[3]

---

[3] Port of Louisville specifically argues that it does not believe that Stratton, as a CPA with decades of experience, could have "complete unawareness of the distinction between income and expenses," and does not believe his "erroneous opinions were mistakes honestly made," but instead believes his opinions "were offered because it was what [Stratton's] employer Riverport Authority wanted them to say." In making such allegations, Port of Louisville itself is protected from any subsequent suit for defamation due to the judicial statements privilege.

Port of Louisville argues that a remedy is needed to prevent the sort of injustice that it has suffered from occurring again. Port of Louisville argues that the judicial statements privilege as applied results in unintended negative consequences because there is no real check on experts testifying in whatever manner might benefit the party that has hired them. We disagree that such a radical change to our judicial statements privilege is needed. We are not persuaded by Port of Louisville's citation to other jurisdictions' caselaw regarding the litigation privilege as there is a substantial divergence in how individual states have widened or narrowed their application of this privilege.

We recognize that the judicial statements privilege is not without cost. However, our Courts have adjudged as noted in *Schmidt* that the free and unfettered administration of justice requires such a cost even where in some instances the privilege will immunize despicable, defamatory conduct.

While we understand Port of Louisville's frustration with having to expend time and money by hiring its own expert to counter Stratton's incorrect interpretation of its financial records, Port of Louisville ultimately prevailed in the arbitration process on this issue as Stratton's statements were withdrawn and this ground for breach of the lease was abandoned. This success lessened the impact of the alleged defamatory falsehoods which were countered by truth.

Potential checks on experts' behavior are also available outside of defamation suits. Experts may be disciplined through their certifying boards and there may also be a market response to their testimony being unsuccessful.

Additionally, in the underlying case, the trial court retained jurisdiction, a record was created which included the reports and transcriptions of the testimony, and Port of Louisville could have asked the trial court to intervene had Riverport Authority persisted in presenting inaccurate expert opinions in support of its claims.

**B. Port of Louisville Cannot Establish Professional Malfeasance**

Port of Louisville argues that Stratton owed it a duty to exercise ordinary care, breached that duty, and it was thereby damaged. Port of Louisville seeks to distinguish *Seiller Waterman, LLC v. RLB Props., Ltd.*, 610 S.W.3d 188 (Ky. 2020), in which the Court ruled that a party could not bring a negligence claim against the legal counsel of its opponent as that counsel did not owe the other party a duty. The Court of Appeals opinion below extended the reasoning in *Seiller Waterman* to cover expert witnesses on the basis that they "are most often selected by and work at the direction of counsel." *New Albany Main St. Props., LLC v. Stratton*, 2021-CA-0562-MR, 2022 WL 1695881, at *9 (Ky. App. May 27, 2022) (unpublished).

Port of Louisville argues that paid experts should be held to a higher duty or be liable under the universal duty doctrine based on foreseeability of harm. However, the Court of Appeals correctly determined that an expert witness owes no duty of care to an adverse party, and we agree with its reasoning.

Despite Port of Louisville's hope that we will interpret the "universal duty of care" expansively, Kentucky courts have repeatedly recognized that

9

such a duty "is not boundless." *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 849 (Ky. 2005). The duty does not "allow for new causes of action to arise that did not previously exist." *Johnson v. United Parcel Serv., Inc.*, 326 S.W.3d 812, 815–16 (Ky. App. 2010). "[T]he 'universal duty of care,' has no meaning in Kentucky jurisprudence beyond the most general expression of negligence theory, and certainly none absent a relational context as evidenced by the circumstances of each case." *Jenkins v. Best*, 250 S.W.3d 680, 691 (Ky. App. 2007).

To create a duty, there is the "necessity of a legally cognizable relationship" between the parties. *Id.* at 692. A legally recognizable relationship may be determined to exist if specific conduct by the person/entity claimed to be negligent gave rise to the expectation that such relationship had been formed. *See Pete v. Anderson*, 413 S.W.3d 291, 296 (Ky. 2013) (discussing this concept regarding the attorney-client relationship); *Jenkins*, 250 S.W.3d at 692 (Ky. App. 2007) (interpreting *Noble v. Sartori,* 799 S.W.2d 8 (Ky. 1990), in discussing the formation of the physician-patient relationship). The lack of a legally recognizable relationship explains why, as was held in *Seiller Waterman, LLC*, 610 S.W.3d at 201, an attorney lacks any duty of care to the opposing party.

There is no legal relationship between opposing counsel and an opposing party. Instead, there is an established oppositional relationship which belies any reasonable basis for there to be an enforceable duty from opposing counsel

10

to the opposing party. The same holds true for experts employed by the opposing party.

Port of Louisville had no legally recognized relationship with Stratton which would cause Stratton to owe it a duty and we will not impose one on Stratton after the fact. Port of Louisville had no reasonable expectation that Stratton was working for its benefit, it was an intended beneficiary, or even that Stratton would be fully impartial. Instead, Port of Louisville knew Stratton would be working on behalf of Riverport Authority to aid it in establishing a breach of the lease. While Port of Louisville is justifiably frustrated that Stratton apparently did not act in either a competent or a professionally appropriate manner in offering its opinions, which were ultimately proved to be incorrect, this cannot justify the imposition of a duty on Stratton owed to Port of Louisville.

### III. CONCLUSION

We affirm the Jefferson Circuit Court and the Kentucky Court of Appeals. This matter was properly dismissed.

All sitting. All Concur.

11

COUNSEL FOR APPELLANTS:

Kenneth A. Bohnert
F. Chris Gorman
Edward F. Busch
Conliffe Sandmann & Sullivan


COUNSEL FOR APPELLEES:

Mark S. Fenzel
David J. Kellerman
McBrayer PLLC