RENDERED:  AUGUST 8, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1122-MR


ISCO INDUSTRIES, INC.                                    APPELLANT


|       | APPEAL FROM JEFFERSON CIRCUIT COURT |
|-------|-------------------------------------|
| v.    | HONORABLE ERIC JOSEPH HANER, JUDGE  |
|       | ACTION NO. 20-CI-003079             |


THOMAS W. O'NEILL                                          APPELLEE


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  ACREE, CETRULO, AND TAYLOR, JUDGES.

CETRULO, JUDGE:  ISCO Industries, Inc. ("ISCO") appeals from several orders

and the judgment and jury verdict of the Jefferson Circuit Court.  All of the rulings

denied ISCO relief in its breach of contract and other related claims brought

against its former employee, Thomas O'Neill ("O'Neill").  After careful review of

the record and law, we reverse and remand, finding that further proceedings are

warranted on all claims.

# BACKGROUND

Many of the facts in this case are undisputed. O'Neill worked for ISCO for nearly 22 years, where he eventually rose to the position of Chief Sales Officer. On March 1, 2013, O'Neill signed a Stock Appreciation Rights ("SAR") Certificate and a Restrictive Covenant Agreement ("RCA") with ISCO. The SAR Certificate provided O'Neill with compensation in the form of stock appreciation rights in exchange for confidentiality. The RCA prohibited O'Neill from disclosing or disseminating proprietary and confidential information to third parties and required O'Neill to return ISCO documents and property in the event that his employment ended.

In 2018, O'Neill signed a SAR Exercise Election and Release Agreement, and he received $783,674.05 as compensation for his vested stock appreciation rights acquired through the SAR Certificate. As part of the SAR Election and Release Agreement, O'Neill agreed that if he "materially violate[d] any terms of [the] Agreement, ISCO [could] terminate any unpaid compensation and [could] recoup the consideration already provided and seek damages and costs, including reasonable attorney's fees."

On the evening of March 1, 2020, O'Neill accessed ISCO's servers and downloaded over 900 documents to his Dropbox account. The next day, O'Neill resigned from his position with ISCO. That day, he returned his ISCO

laptop and phone but nothing else ISCO-related. ISCO's Vice President of IT instructed O'Neill to return business-related materials, and O'Neill agreed, but no definite timetable was set for the return. ISCO agreed to pay O'Neill through the end of March, and O'Neill agreed to remain available, if needed, to assist during the transitionary period related to his departure.

O'Neill retained counsel, and, on April 24, he joined other former ISCO employees in objecting to a proposed settlement of pending litigation in Delaware (the "*Swain*" case).[1] Two internal ISCO emails were attached to the *Swain* objections, which O'Neill later admitted to providing to his attorneys. Also on that same date, O'Neill's attorneys filed another ESOP class action case against ISCO in the Western District of Kentucky (the "*Best*" case). O'Neill was not a party in the *Best* case; however, certain information appeared in the *Best* complaint that ISCO believes O'Neill provided.

Within days of those filings, ISCO contacted O'Neill and demanded that he return all ISCO-related notes and documents. O'Neill complied and returned ISCO notes/documents in early May.[2] ISCO then filed the instant action on May 21, 2020.

---

[1] ISCO was not a party in the *Swain* case, but it involved alleged improprieties of ISCO's Employee Stock Ownership Program ("ESOP") trustee.

[2] There is continuing debate about whether all documents were returned, but that debate is not relevant to our discussion in light of our rulings.

# PROCEDURAL HISTORY

In its complaint, ISCO alleged that O'Neill breached the RCA by: (i) taking and disclosing confidential ISCO information to third parties; (ii) allowing that information (or portions of it) to be used in public pleadings; and (iii) retaining confidential materials and refusing to return them to ISCO. Additionally, ISCO claimed the breach of the RCA resulted in a material breach of the SAR Certificate and SAR Election (collectively the "SAR"). In conjunction with the breach of contract claims, ISCO made claims for breach of fiduciary duty, unjust enrichment, conversion, and breach of implied covenant of good faith and fair dealing.

O'Neill filed a motion to dismiss the complaint on October 1, 2020. O'Neill argued that ISCO's claims should be dismissed because they were seeking to hold him liable for his participation in *Swain* and *Best*, and that this was barred by the judicial statements privilege. In January 2021, the trial court entered an order granting that motion, in part, ruling that the judicial statements privilege did apply to the breach of contract claim made in connection with the *Swain* case. The court did not initially extend the privilege to the breach of contract claim related to the *Best* litigation. Later, however, on summary judgment, the court held O'Neill's alleged disclosures in the *Best* case were also protected by the judicial statements privilege. Additionally, the court granted O'Neill's motion in part as to ISCO's conversion claim. It held that ISCO's conversion claim survived as applied to

O'Neill's retention of ISCO-related iPad notes but not as to any other ISCO-related documents and/or materials.

The trial court noted "that the judicial statements privilege [did] not apply to claims relating to O'Neill's post-employment retention of documents, finding that retention is conduct rather than a mere 'statement' to which the privilege might apply." The trial court also held that it was a jury question "as to whether O'Neill's alleged breach" of the RCA by retaining documents amounted to a material breach of the SAR "such that ISCO might be entitled to recover SAR compensation already paid to O'Neill."

A four-day trial took place from March 19 to March 22, 2024, on these now limited issues of whether O'Neill: (1) breached the RCA by retaining ISCO documents/materials and failing to return them promptly, and whether such a breach amounted to a material breach of the SAR; (2) breached his fiduciary duties to ISCO; and (3) converted ISCO property (as to his ISCO-related iPad notes only). While discussing final jury instructions before closing arguments, ISCO objected to the jury not being instructed on compensatory damages and the absence of a "missing evidence" instruction. The jury returned a verdict in O'Neill's favor. The trial court denied ISCO's post-judgment motions. Now ISCO appeals those orders and the jury verdict.

## ANALYSIS

First and foremost, ISCO argues the trial court erred by granting O'Neill's motion to dismiss and motion for summary judgment on its breach of contract claims for O'Neill's disclosure of ISCO's confidential information. ISCO argues that the judicial statements privilege does not apply because its claim is based on O'Neill's *conduct* and not *statements*, and because the privilege does not protect against claims for intentional breaches of contract.[3] Conversely, O'Neill asserts that his conduct was communicative in nature, and the information disclosed was material and relevant to those other judicial proceedings and thus protected.

We review a motion to dismiss *de novo* and construe the facts "in favor of the plaintiff." *New Albany Main St. Props., LLC v. Stratton*, 677 S.W.3d 345, 348 (Ky. 2023) (citation omitted). Likewise, whether summary judgment should be granted is a question of law, and "an appellate court always reviews the substance of a trial court's summary judgment ruling *de novo*[.]" *Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky. 2010). "Additionally, the existence of a

---

[3] ISCO also argues the trial court erred when it did not grant its motions for a directed verdict and judgment notwithstanding the verdict ("JNOV"). ISCO contends the evidence was undisputed that O'Neill breached the RCA by retaining and failing to promptly return ISCO documents, and thus no reasonable jury could have concluded otherwise. Next, ISCO argues the trial court erred when it declined to give jury instructions on missing evidence and compensatory damages.

privilege presents an issue of law and is also subject to *de novo* review." *Stratton*, 677 S.W.3d at 348 (citing *Smith v. Martin*, 331 S.W.3d 637, 640 (Ky. App. 2011)).

In Kentucky, the judicial statements privilege, often referred to as the litigation privilege in other jurisdictions,[4] provides an absolute privilege from civil suits that arise exclusively out of statements made during judicial proceedings, including pleadings and witness statements. *Id.* (citing *Maggard v. Kinney*, 576 S.W.3d 559, 567 (Ky. 2019); and citing *Schmitt v. Mann*, 163 S.W.2d 281, 283 (1942)); *Halle v. Banner Indus. of N.E., Inc.*, 453 S.W.3d 179, 184 (Ky. App. 2014). To be covered by the judicial statements privilege, the communication must: (1) have been made preliminary to, in the institution of, or during the course of judicial proceedings; and (2) be material, pertinent, and relevant to the judicial proceeding. *Stratton*, 677 S.W.3d at 349 (citing *Morgan & Pottinger, Attys., P.S.C. v. Botts*, 348 S.W.3d 599, 602 (Ky. 2011), *overruled on other grounds by Maggard*, 576 S.W.3d at 570).

"The doctrine behind the judicial statements privilege rests upon public policy which looks to the free and unfettered administration of justice, though, as an incidental result, it may, in some instances, afford an immunity to the evil-disposed and malignant slanderer." *Id.* (quoting *Schmitt*, 163 S.W.2d at 284)

---

[4] As such, when discussing Kentucky law we refer to it as the "judicial statements privilege," but we refer to it as the "litigation privilege" when discussing other jurisdictions.

(internal quotation marks omitted).  That said, "[l]ittle has been written in Kentucky regarding the scope of the privilege beyond defamation actions[,] . . . [and] the judicial statements privilege, although vital to the administration of justice, should not be an exception to the general rule that privileges are to be narrowly construed."  *Halle*, 453 S.W.3d at 185 (citations omitted).  Further, "[t]he privilege is limited to communications and *does not cover conduct*."  *Stratton*, 677 S.W.3d at 349 (citing *Halle*, 453 S.W.3d at 185) (emphasis added).

Whether the judicial statements privilege applies to a breach of contract action is an issue of first impression in Kentucky.  The answer to that question requires us to examine the reasoning that has led our courts to expand the privilege beyond defamation in some circumstances and to refrain from expansion in other circumstances.[5]

The judicial statements privilege "does not bar the cause of action but only renders it unsustainable if *based exclusively on statements* privileged under the law."  *Halle*, 453 S.W.3d at 184 (emphasis added).

> As new torts derivative of defamation have emerged, some
> jurisdictions have expanded the privilege.  *See Simms v.*

---

[5] "In deciding if the privilege applies, the focus must be on the allegedly tortious act – either a false statement or the wrongful institution of an action.  If the tort claim, whether for defamation, perjury, or even malicious prosecution, is based on a false statement, the privilege can bar it.  But if the tort claim is based on the institution of the action, the privilege has no applicability whatsoever."  *Morgan & Pottinger, Att'ys, P.S.C. v. Botts*, 348 S.W.3d 599, 607 (Ky. 2011) (Noble, J., dissenting), *as modified on denial of reh'g* (Oct. 27, 2011), and *overruled by Maggard v. Kinney*, 576 S.W.3d 559 (Ky. 2019).

*Seaman*, 308 Conn. 523, 566, 69 A.3d 880 (2013).  The prevailing thought when expanding the privilege to torts other than defamation is[:] . . .

> If the policy, which in defamation actions affords an absolute privilege or immunity to statements made in judicial and quasi-judicial proceedings is really to mean anything then we must not permit its circumvention by affording an almost equally unrestricted action under a different label.

*Id.* at 184-85 (citations omitted).  In other words, if a claimant sues under a different cause of action, but the nature of the claim is actually rooted in defamatory statements made in judicial proceedings, the judicial statements privilege does bar the action.  *See id.*  We note, there is no defamation alleged here.

Our courts have refused to apply the judicial statements privilege to many other civil actions.  *See id.* at 187 (concluding "the judicial statement privilege has no application to abuse of process claims"); *see also Bullock v. Hardy*, No. 2016-CA-000373-MR, 2017 WL 4570582, at *4 (Ky. App. Oct. 13, 2017)[6] (declining to apply the judicial statements privilege to bar the appellee's claims for abuse of process, malicious prosecution, and wrongful use of civil proceedings, because the claims were "premised upon the Appellants' conduct, not on statements they made in their judicial pleadings"); *see also Ballard v. 1400*

---

[6] This is an unpublished and non-binding case cited to only as persuasive authority.  Kentucky Rule of Appellate Procedure 41.

*Willow Council of Co-Owners, Inc.*, 430 S.W.3d 229, 238 (Ky. 2013) (concluding "that the filing of a *lis pendens* is protected [only] by a qualified privilege[,]" as opposed to the typical absolute privilege afforded to pleadings).

Secondly, while the claims and application vary, courts consistently use restraint before applying the judicial statements privilege, particularly when application of the privilege would destroy the only available remedy for a cognizable legal wrong. For instance, while the privilege bars civil actions, it does not shield a perjurer from criminal prosecution. *McClarty v. Bickel*, 159 S.W. 783, 784-85 (Ky. 1913) (citations omitted) ("Where a witness willfully and maliciously gives false testimony, he is liable to prosecution for perjury or false swearing. [But,] [n]o civil action will lie against him[.]"). This principle has carried through to the modern era, where our Supreme Court has declined to grant witness immunity[7] in disciplinary proceedings.

> [A]bsolute immunity is a judicially created privilege
> founded upon the belief that the administration of justice

---

[7] We note that witness immunity is rarely analyzed in-depth in Kentucky cases. Where it is discussed in more detail, witness immunity is analyzed in tandem with the judicial statements privilege. *See Maggard v. Kinney*, 576 S.W.3d 559, 568-69 (Ky. 2019) (discussing the judicial statements privilege and the "confusion with one parallel, and sometimes intersecting legal rule, . . . so-called 'witness immunity.'" The Court ultimately decided that neither the judicial statements privilege nor witness immunity met "the collateral order exception to the final judgment rule[.]"); *see also Curd v. Kentucky State Bd. of Licensure for Prof'l Eng'rs. & Land Surveyors*, 433 S.W.3d 291, 298 (Ky. 2014) (internal quotation marks and citation omitted) (stating that "absolute immunity is a judicially created privilege"). Whether witness immunity is separate from the judicial statements privilege or subsumed within it, it appears to be based off the same reasonings and created for the same purposes, which are to protect witnesses from civil liability for otherwise actionable statements made in judicial proceedings. Therefore, we find the witness immunity cases instructive in developing our judicial statements privilege analysis.

requires witnesses in a legal proceeding be able to discuss their views without fear of a defamation lawsuit.

The protection of expert witnesses' ability to testify freely in a judicial proceeding does not, however, merit placing them beyond the reach of *any* punishment for their improper testimony. The scope of absolute immunity has been limited to situations where some power to discipline remains available.

*Curd v. Kentucky State Bd. of Licensure for Professional Engineers and Land Surveyors*, 433 S.W.3d 291, 298 (Ky. 2014) (internal quotation marks and citation omitted) (declining to extend absolute immunity to protect an expert witness from administrative disciplinary proceedings); *see also Maggard v. Commonwealth, Bd. of Exam'rs of Psychology*, 282 S.W.3d 301, 303 (Ky. 2008) (declining to grant absolute immunity to a psychologist in an administrative disciplinary proceeding for statements contained in a written report that he generated in connection with another lawsuit). From these cases, we derive the principle that courts should use restraint before applying the judicial statements privilege, particularly when application of the privilege would destroy the only available remedy for a cognizable legal wrong.

As this is a case of first impression, we have considered other state court rulings and found much divergence in application of the privilege to breach of contract actions across the country. *See Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152, 162 (Tenn. Ct. App. 1997) (holding that the litigation privilege applies

to a procurement or inducement of breach of a contract when the claim is "based on [] false and defamatory statements" made "in the course of judicial proceedings"); *but see Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1218-20 (11th Cir. 2018) (holding that Florida's litigation privilege did not apply to "the awarding of damages for breaches of agreements not to sue a contract counterparty"). In *Sun Life*, the 11th Circuit did not believe "a party [could] never face a breach of contract suit for its litigation activity [because that position] would create perverse incentives that would undermine the 'strong public policy favoring freedom of contract' that is 'not to be lightly interfered with.'" *Id.* at 1220 (citations omitted). By way of illustration, the *Sun Life* court opined that such a rule would allow "a party [to] enter into a solemn agreement not to disclose certain sensitive information (*i.e.*, trade secrets or personal data), and the following day make the disclosure in a civil complaint without facing any liability." *Id. See also Paige Capital Management, LLC v. Lerner Master Fund, LLC*, 22 A.3d 710, 713-15 (Del. Ch. 2011); and *Feenix Payment Systems, LLC v. Blum*, No. CV N21C-05-099 EMD CCLD, 2022 WL 215026, at *7-9 (Del. Superior. Ct. Jan. 25, 2022) (finding that "[i]f the Court were to hold that parties can circumvent these provisions by filtering their breaches through a lawyer in the context of potential litigation, such contracts would contain an unforeseen but easily exploited loophole").

Fundamentally, there is no "one size fits all" answer to the question: *whether the judicial statements privilege bars a breach of contract action.* Instead, our courts should decide these issues on a case-by-case basis. In the analysis here, we turn to the actual contractual language in issue.

RCA § 2.01 states that:

> . . . in order to obtain access to such Proprietary Information, Employee [(O'Neill)] agrees that, during the Confidentiality Period, except as otherwise reasonably necessary in connection with Employee's performance of Employee's duties assigned to Employee by the Company, Employee will hold in confidence all Proprietary Information and will not reproduce, distribute, disclose, publish or otherwise disseminate any Proprietary Information, in whole or in part, and will take no action causing, or fail to take any action necessary to prevent causing, any Proprietary Information to lose its character as Proprietary Information, nor will Employee use any such information for Employee's own purposes or for the benefit of any Person (except the Company) under any circumstances.

In short, RCA § 2.01 forbade O'Neill from sharing, using, copying, or disclosing ISCO's confidential and/or proprietary information for his own benefit or that of another. Neither party denies this nor claims that the contract is invalid. Indeed, such provisions are common in employment settings, particularly with highly compensated executive employees.

ISCO placed O'Neill in a high position of trust as its Chief Sales Officer, and he was generously compensated through the SAR disbursement,

which required him to remain in compliance with the RCA. ISCO sought to hold O'Neill liable for the conduct of taking/retaining and sharing confidential information with third parties, including his attorneys, which then allegedly appeared in the *Best*/*Swain* cases. When deposed, O'Neill admitted to sharing some information with his attorneys, which may have appeared in the *Best* complaint and *Swain* objections. It is unclear from the limited discovery permitted below whether third parties may have also received this information.

In a typical breach of confidentiality agreement case, an employee that uses his employer's, or former employer's, confidential information for his benefit or the benefit of another will be held liable for breach. *See Fastenal Co. v. Crawford*, 609 F. Supp. 2d 650, 672-73 (E.D. Ky. 2009) (upholding a jury award for breach of a confidentiality agreement when the defendant's "testimony acknowledg[ed] the agreement and its importance, his access to the information and subsequent employment[,]" for a direct competitor). We see no legitimate reason why here, if he did share ISCO's confidential information with his attorneys and/or other third parties to aid in the *Best* and *Swain* cases, O'Neill should not be held to the same standard.

Further, if O'Neill's actions did result in a breach of contract, there is not an alternative punishment scheme that could remedy his illicit conduct. O'Neill would not be subject to criminal prosecution for perjury. There is no

administrative body that could discipline O'Neill for any disclosures that may have run afoul of the RCA. Truly, the only avenue for justice would be through ISCO's breach of contract action. Like the states discussed, *supra*, "Kentucky . . . has long respected freedom of contract and allowed parties to allocate among themselves the foreseeable risks." *See Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 786 (Ky. 2017) (citing *Cumberland Valley Contractors, Inc. v. Bell Cnty. Coal Corp.*, 238 S.W.3d 644 (Ky. 2007); and citing *Zeitz v. Foley*, 264 S.W.2d 267, 268 (Ky. 1954) (explaining that contracts should not "be set aside lightly" because "right of private contract is no small part of the liberty of the citizen")). Extending the privilege here impedes the parties' freedom of contract, and upon our *de novo* review, we conclude that the immunity from suit granted below to one who expressly contracted away his right to share confidential information was too broadly applied.

Further, we conclude that O'Neill's use and disclosure amounted to conduct, not mere statements. Again, the purpose of the judicial statements privilege is to allow, "in certain circumstances[,] otherwise defamatory-per-se communications . . . because the societal interest in the unrestricted flow of communication is greater than the private interest" of not being defamed. *Stratton*, 677 S.W.3d. at 348. In *Stratton*, the Port of Louisville filed a complaint alleging an accounting firm engaged in professional malfeasance and defamation during a

-15-

court-ordered arbitration. *Id.* Our Supreme Court determined that "statements made pursuant to court-ordered arbitrations are protected by the judicial statements privilege to the same extent as statements made in other court proceedings." *Id.* at 349. Further, our Court determined that the judicial statements privilege applies to expert witnesses, just as it does to lay witnesses, in part because "[p]otential checks on experts' behavior are also available outside of defamation suits. Experts may be disciplined through their certifying boards and there may also be a market response to their testimony being unsuccessful." *Id.* at 350. Here, there was no defamation. He took something he was not permitted to take and shared it. This is quite different from a scenario where O'Neill may have been called to testify in a separate proceeding and spoke about his former employer in a defamatory manner.[8]

As stated in *Stratton*, *supra*, the privilege does not cover *conduct*. 677 S.W.3d at 349. In short, we cannot agree with the trial court below that there is a distinction between the taking and sharing of information and the subsequent retention of information such as to consider the former as "communicative" and

---

[8] O'Neill also argues that, regardless of whether the judicial statements privilege applies, information he shared was not confidential; thus he did not breach the RCA nor materially breach the SAR. The trial court did not address the merits of these issues. As such, they are not properly before us, and we will not decide whether O'Neill did in fact disclose *confidential* ISCO information or whether such a disclosure would be a material breach of the SAR. *See Kendall v. Comm. Cab Co. Inc.*, 610 S.W.3d 694, 699 (Ky. App. 2020) (declining to address the merits of a claim that the trial court dismissed in error).

the later as "conduct." O'Neill's actions in total constitute conduct that is not protected by the judicial statements privilege in a breach of contract action.

Finally, ISCO urges us to revive its other breach of contract claim for O'Neill's retention of ISCO documents, and the related claims for breach of the implied duty of good faith and fair dealing, breach of fiduciary duty, and conversion. These were the claims that went to the jury, and the jury found in favor of O'Neill on those claims. However, the two claims – that O'Neill breached the RCA by retaining ISCO information/documents and that he then breached the RCA by disclosing some of that information to third-parties – are so interconnected that we "cannot determine from the record that the verdict was not influenced" by entirely omitting the disclosure claim from the trial. *See Drury v. Spalding*, 812 S.W.2d 713, 717 (Ky. 1991). Omission of the disclosure claim "was sufficiently prejudicial to entitle" ISCO to a new trial, but "the trial court will retain the discretion to decide" the issues presented anew. *Clephas v. Garlock, Inc.*, 168 S.W.3d 389, 395 (Ky. App. 2004). Therefore, in addition to reversing the trial court's orders holding that the breach of contract claims for wrongful disclosure were barred by the judicial statements privilege, we set aside the judgment on the jury's verdict, and remand for further discovery and proceedings consistent with this Opinion.

In light of our holding, ISCO's appeals as to its motions for a directed verdict, JNOV, and jury instructions are considered moot. *Commonwealth, Kentucky Bd. of Nursing v. Sullivan Univ. Sys. Inc.*, 433 S.W.3d 341 (Ky. 2014) (holding that while this Court may address its own subject matter jurisdiction *sua sponte* when necessary, we are required to dismiss an appeal when a change in circumstances renders us unable to grant meaningful relief to either party) (citations omitted). These issues all pertain to trial decisions that are no longer applicable because we have set aside the jury verdict and remanded the case to the trial court for further proceedings. As such, we will not render an opinion on them. Upon further discovery and proceedings, these issues may or may not come up again, and their resolution is within the sound discretion of the trial court. *See Primal Vantage Co., Inc. v. O'Bryan*, 677 S.W.3d 228, 251 (Ky. 2022) (citing *Jones ex rel. Jones v. IC Bus, LLC*, 626 S.W.3d 661, 682 (Ky. App. 2020); and citing *Nordike v. Nordike*, 231 S.W.3d 733, 739 (Ky. 2007) (declining "to render an advisory opinion on an issue that may or may not occur in the future" that was not decided on appeal, because such issues are best left to the trial court's discretion)).

## CONCLUSION

Accordingly, we REVERSE the Jefferson Circuit Court as it relates to the application of the judicial statements privilege to ISCO's claim for breach of

contract by O'Neill for use and disclosure of information alleged to be confidential. Because ISCO's breach of contract claims and the related claims are interconnected, we set aside the judgment on the jury's verdict and REMAND to the trial court for further discovery and proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Griffin Terry Sumner
Theresa A. Canaday
Carrie M. Mattingly
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

Griffin Terry Sumner
Louisville, Kentucky

BRIEF FOR APPELLEE:

Clark C. Johnson
Michael T. Leigh
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEE:

Clark C. Johnson
Louisville, Kentucky